**Charlotte Ann PLOTNER, Appellant,**

v.

**AT & T, Appellee.**

**No. CIV–94–1254–A.**

**Bankruptcy No. 92–17405–LN.**

United States District Court,
W.D. Oklahoma.

Sept. 9, 1994.

Joseph A. Buckles, II, Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, OK, for appellant.

James T. Priest, Kenneth N. McKinney, Gary D. Hammond, McKinney Stringer & Webster, Oklahoma City, OK, for appellee.

## ORDER

ALLEY, District Judge.

This case comes before the Court as an appeal from a decision of the United States Bankruptcy Court for the Western District of Oklahoma. Appellant, Charlotte Plotner, appeals Judge Lindsey's June 16, 1994, decision denying her Application for Rejection of a Real Estate Contract, specifically challenging the sale price of the property. Appellee moves for dismissal of the appeal asserting that the issue is moot, because the sale of the property has been consummated.

Appellant Charlotte Plotner filed for Chapter 11 Bankruptcy on November 9, 1992, in the United States Bankruptcy Court for the Western District of Oklahoma. Appellant's assets included a parcel of land located at I–40 and Council Road ("the I–40 property") in Oklahoma City. On December 17, 1993, Judge Lindsey entered an order confirming the Joint Plan of Reorganization (the "Joint Plan") filed by appellant and Central Bank, a creditor. The Joint Plan required appellant to transfer the I–40 property to Gerald Gamble, marketing trustee for the Plotner Land Trust, governed by the Plotner Land Trust Agreement ("PLTA"). The PLTA was created for the liquidation of the four tracts of land, collectively known as the I–40 property. Under the terms of the PLTA, Mr. Gamble was to create and implement a marketing strategy for the I–40 property and to serve as a real estate broker for property; and appellant and two secured creditors of the I–40 property had the power, as voting trustees, to approve bids below the release price for the I–40 property. Barney U. and Virginia Martin Brown, co-trustees of the Barney U. Brown Trust, and Central Bank served as

voting trustees, with six and sixteen votes respectively. Appellant held six votes under the PLTA. After execution of the trust agreement, the Barney U. Brown trust acquired Central Bank's secured claim and the votes accompanying the claim.

On May 6, 1994, Mr. Gamble accepted a bid by Charles Green to purchase the entire I–40 property for $1,100,000, a bid below the release price. As required under the trust agreement, Mr. Gamble accepted this bid only after receiving a majority of consenting votes. The Browns, as trustees, cast each of their twenty-two votes in favor of the sale. On May 13, 1994, appellant, who voted against accepting Green's bid, filed an Application for Rejection of a Real Estate Contract. Appellant asserted that she had received a more favorable alternative offer of $1,500,000.

On June 13, 1994, the bankruptcy court conducted a hearing on appellant's application. In an order of June 16, 1994, Judge Lindsey determined that the sale of the I–40 property was in accordance with the terms of the trust agreement; a majority of the voting trustees had approved the sale and the sale had been substantially consummated. On June 16, 1994, Mr. Green assigned all of his rights under the May 6, 1994 contract to AT & T. On June 24, 1994, appellant filed a Notice of Appeal. On June 27, 1994, appellant filed a Motion for Stay Pending Appeal. The bankruptcy court denied appellant's motion for a stay on July 1, 1994; AT & T and Gamble completed the sale on the same day. Appellant appeals the bankruptcy court's decision denying her request for a rejection of the sales contract. Appellee moves to strike, based on the mootness doctrine.

 "Bankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets[;] [w]hether an order directly approves the sale or simply lifts the automatic stay." *In re Onouli–Kona Land Co.*, 846 F.2d 1170, 1171 (9th Cir.1988) citing *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1423 (9th Cir.1985). Congress relocated the mootness provision of Bankruptcy Rule 805 to 11 U.S.C. § 363(m) when Rule 8005 was

enacted. If a case falls outside of 11 U.S.C. § 363(m), the judicially created doctrine may still apply. *See Algeran, Inc.,* 759 F.2d 1421 (1985) (cases falling under Rule 8005, but not under § 363(m), are still affected by mootness doctrine). Therefore, barring the application of an exception to the mootness doctrine, unless a stay is obtained, an order approving a sale of property will not be affected on appeal. *Id.*

Courts, although hesitant to overcome the mootness doctrine, will reconsider a sale on appeal where: the purchaser was not a good faith purchaser, *In re Vetter Corp.,* 724 F.2d 52, 55 (7th Cir.1983); the contract of sale makes finality contingent, *Matter of Cada Invs. Inc.,* 664 F.2d 1158, 1160 (9th Cir.1981); or a creditor is also the purchaser, *In re Sun Valley Ranches, Inc.,* 823 F.2d 1373, 1375 (9th Cir.1987). The only exception appellant argues is applicable in this case is the good faith purchaser exception. Although the Bankruptcy Code does not define "good faith," courts have "turned to the traditional equitable definitions of a 'good faith purchaser.'" *In re Bel Air Assocs., Ltd.,* 706 F.2d 301, 305 (10th Cir.1983). A sale lacks good faith when it "involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir.1978).

Appellant contends that this Court cannot make the initial determination of whether AT & T is a good faith purchaser. Appellant, however, supports her assertion with a case where the circumstances surrounding the disputed sale were ripe for foul play. Because of the heightened potential for fraud and misbehavior, the appellate court required a remand from the district court to the bankruptcy court for a factual determination whether the purchaser acted in good faith. *In re Abbotts Dairies,* 788 F.2d 143, 149 (3rd Cir.1986). The circumstances surrounding the sale of the I–40 property are not troubling with regard to AT & T's activities. This court is properly positioned for determining whether appellee acted in good faith. *See In re Bleaufontaine, Inc.,* 634 F.2d 1383, 1388 n. 8 (5th Cir.1981) (remand not necessary in all cases involving the sale of bankrupt's property).

Appellant does not assert that AT & T committed fraud in the purchase of the I–40 property. Appellant argues that in order to mask their identity and undercut the price, AT & T negotiated through an undisclosed agent, thereby denying the debtor of the best available price. Appellant falls short with her allegations of bad faith. Appellant presented no evidence of fraud by AT & T. There are no allegations that AT & T acted in concert with the trustees or with the other bidders to defraud appellant. Although appellant alleges a breach of the trustees' fiduciary duty, this breach has not been tied to any allegations of misdealing by AT & T. Allegations that AT & T attempted to take unfair advantage of other bidders is also lacking. There is no evidence that other bidders were aware of, or influenced by Green's bid. Minimizing the cost of acquiring real estate by using an undisclosed agent is a strategic move, not evidence of bad faith.

The determination of whether a purchaser acted in good faith also requires a showing that the purchaser gave "value" in exchange for the debtor's asset. Absent "value" a court may set aside a sale. The Tenth Circuit has traditionally defined "value" as "75% of the appraised value of the assets." *In re Bel Air Assocs., Ltd.,* 706 F.2d 301, 305 n. 12 (10th Cir.1983) (citations omitted). The bankruptcy court received two appraisals of the property from the parties. Appellant offered an appraisal of $1,500,000 for the I–40 property. The appraisal secured by Central Bank valued the property at $1,325,000. AT & T purchased the property for $1,100,000. 75% of the average of the appraised values, $1,425,000, is $1,059,357, an amount below that paid by AT & T. Although the selling price of the property was less than the appraised value, such sales are not unusual. AT & T paid 73.3% of the higher appraisal. Additionally, AT & T paid more than 75% of the lower appraisal. Furthermore, the voting trustees voted in accordance with the PLTA in accepting the bid. Absent indications of fraud or wrongdoing rising above bare allegations of a land

grab, AT & T meets the requirements for being a good faith purchaser.

▓▓▓▓ Appellant, citing *In re Sun Valley Ranches,* 823 F.2d at 1375 (9th Cir.1987), also argues that because AT & T is a party to this appeal, the mootness doctrine does not apply. Appellee, unlike the *In re Sun Valley* purchaser, was not a creditor of the I–40 property. Because AT & T was merely the purchaser, this Court can provide no remedy to the sale. *See Algeran, Inc.,* 759 F.2d 1421, 1424 (purchaser joined as party is irrelevant to mootness doctrine). Joining AT & T to the action does not affect the application of the mootness doctrine. The presence of a creditor-purchaser is indispensable in appellant's attempt to avoid the mootness doctrine, both in terms of joining the necessary parties and asserting a debtor's right of redemption.

▓▓▓▓ Appellant asserts that her right of redemption prevents the sale to AT & T from being considered final or moot. Redemption is a "second opportunity for a Mortgagor in default to pay the mortgage debt in full, discharge the lien and acquire the unencumbered title to the mortgaged property." *Lincoln Mortgage Investors v. Cook,* 659 P.2d 925 (Okla.1982). In other words, it is the right to pay off the creditor and save the property from sale. Appellant correctly contends that a mortgagor has a right of redemption; and that the right did not terminate with the transfer of the I–40 property to the trustee. The transfer of the property to the trustee, however, transferred the right of redemption to the trustee. *See Buttram v. Hutchins,* 2 B.R. 92, 96 (Bankr. N.D.Okla.1979) (title to collateral vests in trustee upon filing bankruptcy). The sale to AT & T extinguished appellant's right of redemption. The sale to AT & T, unlike the scenarios in Title 46 O.S. §§ 1 and 2, was not an equitable mortgage. Title 46 §§ 1 and 2 dictate that when a transfer appears to be unrestricted, but is actually a debt security arrangement, the creditor must foreclose following applicable state procedures. Appellant effectively agreed in advance to the sale of the I–40 property, obviating foreclosure. The PLTA called for a vote of the trustees in accepting a bid lower than the release price.

Appellant agreed to divest her control through the PLTA, which she aided in formulating. Additionally, appellee did not accept the I–40 property as security for a debt. A creditor who purchases the mortgaged property at a subsequent foreclosure sale owns the property subject to the mortgagor's statutory redemption rights. *In re Onouli–Kona Land Co.,* 846 F.2d at 1173. AT & T, however, was not a creditor and is not subject to appellant's right to redeem.

▓▓▓▓ Additionally, the right to redeem is not the right to sell the property to another bidder. Redemption requires that the mortgagor repay the entire amount of the lien or mortgage in order to retake the property. *See Mid–State Homes, Inc. v. Jackson,* 519 P.2d 472, 476 (Okla.1974) ("precondition to curing a default is tender of the mortgage debt in full"). Attempting to redeem by selling the property to another is beyond the boundaries of the equitable right of redemption. Up until the time the sale was consummated, appellant could have tendered payment in the amount due to the I–40 property creditors. Had appellant exercised her right of redemption the property would not have been available for sale, assuming that redemption removed the asset from the bankruptcy estate.

▓▓▓ Appellant's final argument against application of the mootness doctrine is that not all issues raised on appeal require a stay. of the sale. Appellant asserts that the trustees, when voting to accept Green's bid, violated their fiduciary duty to appellant and her creditors. Appellant properly asserts that damages may be collected for a breach of a trustee's fiduciary duty. *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951); *Sherr v. Winkler,* 552 F.2d 1367 (10th Cir.1977); *Matter of Combined Metals Reduction Co.,* 557 F.2d 179 (9th Cir.1977). Appellant's ability to pursue a claim for damages against the Browns, in their fiduciary capacity, is not mooted by the sale of the I–40 property. "Surcharging the trustee appears to be a feasible remedy, and therefore, this aspect of the appeal" is not mooted. *Matter of Combined Metals Reduction Co.,* 557 F.2d at 194. Should appellant success-

fully argue this issue on appeal, monetary damages, not recision of the sale, would constitute an appropriate remedy. Therefore, the issue of fiduciary duty is not affected by the mootness doctrine.

Appellant fails to show why the mootness doctrine does not apply to the sale of the I–40 property. The limited exceptions to the doctrine do not provide appellant with relief with regard to the sale of the I–40 property. Appellant's remedies against the trustees for any breach of their fiduciary duties, however, were not impacted by denial of a stay. Accordingly, appellee's motion to dismiss as moot is GRANTED in part and DENIED in part.

It is so ordered.