# UNITED STATES BANKRUPTCY APPELLATE PANEL

## FOR THE EIGHTH CIRCUIT

————————————

Nos. 97-6041/6048

————————————

In re:                                    *
                                          *
RUSSELL CHARLES FORBES,                   *
                                          *
          Debtor.                         *
                                          *
                                          *  Appeal from the United
GRACE M. FORBES,                          *  States Bankruptcy Court
                                          *  for the Eastern District
          Appellant,                      *  of Missouri
                                          *
v.                                        *
                                          *
RUSSELL CHARLES FORBES,                   *
                                          *
          Appellee.                       *


————————————

Submitted:   October 9, 1997
     Filed:  December 9, 1997

————————————

Before KRESSEL, HILL, and DREHER, Bankruptcy Judges.

————————————

WILLIAM A. HILL, Bankruptcy Judge:

The appellant, Grace M. Forbes ("Grace") is the former spouse and, by virtue of a divorce decree award, a creditor of the Chapter 13 debtor, Russell C. Forbes ("Robert"), the appellee herein. In these consolidated appeals she appeals from the bankruptcy court's approval of post-confirmation modification of Robert's confirmed Chapter 13 plan over her objection and from an order denying her motion for reconsideration of its order approving the sale of real property in which she claims a lien. Robert moved for dismissal of both appeals on grounds of mootness. Resolution of the motion was reserved pending oral argument.

## I. FACTUAL AND PROCEDURAL HISTORY

In December 1992, Robert filed a voluntary petition and repayment plan under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 1301-1330. At the time of the filing, Grace was Robert's creditor, having been awarded maintenance and a monetary judgment against him pursuant to a divorce decree entered in the City Court of the City of St. Louis, Missouri.[1] The monetary judgment was secured by a lien on Robert's property located at 1426-1428 Salisbury Street, St. Louis, Missouri ("Salisbury Street property").

### A. The Modified Plan

Robert's original Chapter 13 plan was a 60-month plan, and provided for monthly contributions to the trustee totaling $60,000.00. It made no specific reference to any particular secured claim, but rather mentioned these claims only generally. Grace's claim was not treated as a secured claim; rather, it was listed in Robert's schedules as an unsecured nonpriority claim. Robert's plan was confirmed on April 5, 1994, without objection.

Shortly thereafter, in June 1994, Robert sought to modify the previously-confirmed original plan by changing the amount of monthly contributions payable to the trustee. His proposed modified plan for the first time identified Grace as a secured creditor, with a claim of $28,000.00 payable without interest over 42 months at $673.00 per month.[2] The bankruptcy court approved

---

[1] Although, numerous documents within the appellant's appendices were stricken by this Panel prior to oral argument, including the divorce decree itself, the information to which this footnote refers is provided by other documents not stricken.

[2] The basis upon which Grace's secured claim was calculated, as set forth in the first modified plan, as well as subsequent modified plans, is unclear. We do not have before us any proof of claim in this connection. Compounding our difficulties in this respect are the debtor's bankruptcy schedules, which list Grace only as an unsecured creditor with a

this postconfirmation modification without objection.

In August 1994, Robert proposed a second postconfirmatiaon modification to the plan, increasing the length of the plan and changing his periodic contributions to the trustee, but leaving unaltered the treatment it accorded Grace. As extended, total plan payments became $67,600.00.

In early 1997, Robert received a settlement from a cause of action which arose postfiling and postconfirmation, as well as three years after the plan payments began. In March 1997, prompted by receipt of the settlement proceeds, Robert proposed a third post-confirmation modification by again changing the manner of contribution. This time he proposed reducing the term of the plan from 60 months to 40 months by making a single lump sum payment to the trustee of $22,800.00, payable immediately upon court approval of the modified plan, in addition to $45,400.00 previously paid the trustee, for total plan payments of $68,200.00.[3] The effect of this proposal was to cash out the entire amount remaining to be paid the trustee by accelerating the payments due in the final 20 months of the plan.

Both Grace and the trustee objected to the proposed modification, alleging that the settlement proceeds constituted a "windfall" which enabled Robert to pay all of his creditors in full. The court overruled the objections, and once again approved Robert's proposed plan modification.

In her appeal from this order, Grace points to Robert's post-confirmation settlement, charging that the proceeds therefrom

---

claim of $16,000.00. The schedules themselves do not establish Grace as a secured creditor.

[3] The discrepancy between this figure and that of the prior modification cannot be explained from the record.

3

became property of the estate pursuant to Bankruptcy Code Section 1306. In this connection she contends that the bankruptcy court, preparatory to approving the accelerated distribution, was required to make an independent determination of the criteria set forth in Bankruptcy Code Section 1329(b)(1), which in turn incorporates Section 1325(a). Under Section 1325(a)(4), Grace argues that the bankruptcy court erred in failing to include Robert's "windfall" in its determinations under that Code section's "best interests of creditors" test. She also argues that the court erred by failing to count the "windfall" as "disposable income" under the "best efforts" test of Section 1325(b)(1)(B).

## B.  Approval of the Property Sale

The second appeal presented concerns the sale of the Salisbury Street property, upon which Grace claims a lien. The bankruptcy court ordered an independent appraisal of this property in July 1994.[4]

At various times during the proceedings in the bankruptcy court, Robert moved to convey the Salisbury Street property to Grace by quitclaim deed, thereby attempting to receive an "allowance of secured claim credit of $55,000.00," presumably in satisfaction of Grace's secured claim. For reasons not disclosed in the record, the bankruptcy court refused to allow the conveyance.

Thereafter, Robert entered into a sale contract on the property, which was made subject to the bankruptcy court's approval, for the sum of $28,000.00. The sale was set for August

---

[4]    Although the minute entries in this case indicate that the appraiser filed an appraisal of the property, the appraisal document itself is absent from the record before us. From peripheral documents included in the record, we can only surmise that the property was appraised at $55,000.00.

4

8, 1996, and, after hearing, the court granted Robert's motion to sell the property for that amount.

Grace then moved the court to reconsider its order permitting sale of the property. The court held a hearing on the matter, and subsequently denied her motion.

On appeal, Grace makes three challenges to the bankruptcy court's sale order. First, she alleges that the order is based upon factual and procedural errors. Next, she argues that the court failed to provide adequate protection for her lien, thereby failing to meet the requirements of 11 U.S.C. § 363(e). Lastly, she contends that the court's April sale order denied her procedural due process.

## II.   STANDARD OF REVIEW

On appeal, the bankruptcy court's findings of fact are reviewed for clear error and its legal determinations are reviewed de novo.  O'Neal v. Southwest Missouri Bank of Carthage (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997);  Natkin & Co. v. Myers (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 848, 851 (8th Cir. 1996);  Hartford Cas. Ins. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), No. 97-6055, 1997 WL 705577, at *1 (B.A.P. 8th Cir. Nov. 14, 1997);  see also FED. R. BANKR. P. 8013.[5] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left

_____

[5]    Rule 8013 of the Federal Rules of Bankruptcy Procedure reads, in pertinent part, as follows:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

FED. R. BANKR. P. 8013.

with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L.Ed. 746 (1948)); see United States v. Garrido, 38 F.3d 981, 984 (8th Cir. 1994); Chamberlain v. Kula (In re Kula), No. 97-6014NE, 1997 WL 694299, at *4 (B.A.P. 8th Cir. Oct. 31, 1997). If the bankruptcy court's account of the evidence is plausible in light of the entire record viewed, it must be upheld even though we might have weighed the evidence differently had we been sitting as the trier of fact. Anderson, 470 U.S. at 573-74, 105 S. Ct. at 1511; Vaughn v. Sexton, 975 F.2d 498, 506 (8th Cir. 1992), cert. denied, 507 U.S. 915, 113 S. Ct. 1268, 122 L.Ed.2d 664 (1993).

"Whether property is included in the bankruptcy estate is a question of law." Ramsay v. Dowden (In re Central Arkansas Broad. Co.), 68 F.3d 213, 214 (8th Cir. 1995). "Chapter 13 plan confirmation issues requiring statutory interpretation are subject to de novo review. Jurisdictional issues also are reviewed de novo." Hagel v. Drummond (In re Hagel), 184 B.R. 793, 795 (B.A.P. 9th Cir. 1995) (citations omitted); see also Leavitt v. Soto (In re Leavitt), 209 B.R. 935, 938 (B.A.P. 9th Cir. 1997) ("Statutory construction involves an issue of law which we review de novo."). The bankruptcy court's denial of a motion for reconsideration is reviewed for an abuse of discretion.[6] Bellus v. United States, 125 F.3d 821, 822 (9th Cir. 1997); Employment Sec. Div. v. W.F. Hurley, Inc. (In re W.F. Hurley, Inc.), 612 F.2d 392, 395-96 (8th Cir. 1980).

---

[6] The abuse of discretion standard and the clearly erroneous standard are indistinguishable. Cooter & Gell v. Hartmarx Corp., 489 U.S. 384, 401, 110 S. Ct. 2447, 2458, 110 L.Ed. 359 (1990); Chamberlain v. Kula (In re Kula), 213 B.R. 729 (B.A.P. 8th Cir. 1997).

### III.  DECISION

### A. The Modified Plan

### i.  Motion to Dismiss as Moot

As a threshold matter, we first address Robert's motion to dismiss Grace's consolidated appeals as moot.  Robert argues that Grace's appeal from the bankruptcy court's order approving the postconfirmation plan modification became moot when the court granted Robert a discharge in bankruptcy, as required under Code Section 1328, after he completed making all of his payments under the modified plan.  We disagree.

"It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology v. United States, 506 U.S. 9, 12, 113 S. Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S. Ct. 1332, 133, 40 L.Ed. 293 (1895)).  Thus, "[t]he 'existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts.'"  In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir.) (quoting In re Grand Jury Subpoenas Dated December 7 and 8 v. U.S., 40 F.3d 1096, 1099 (10th Cir. 1994)), cert. denied, --- U.S. ---, 117 S. Ct. 432, 136 L.Ed.2d 331 (1996);  Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc).

An appeal is moot in this sense "only if events have taken place during the pendency of the appeal that make it 'impossible for the court to grant any effectual relief whatever.'"  In re Continental Airlines, 91 F.3d 553, 558 (3d Cir. 1996) (en banc) (quoting Church of Scientology, 506 U.S. at 12, 113 S. Ct. at 449 (in turn quoting Mills, 159 U.S. at 653, 16 S. Ct. at 133 (internal quotation marks omitted)), cert. denied, --- U.S. ---, 117 S. Ct. 686, 136 L.Ed.2d 610, reh'g denied, --- U.S. ---, 117 S. Ct. 1098,

7

137 L.Ed.2d 230 (1997); Tungseth v. Mutual of Omaha Ins. Co., 43 F.3d 406, 408 (8th Cir. 1994).

Initially we note that it is true that Grace's claim existed in bankruptcy only for so long as Robert's plan existed. Once Robert completed making payments under his plan as modified, the bankruptcy court was required, "[a]s soon as practicable," to grant him a discharge. 11 U.S.C. § 1328(a). This the bankruptcy court did, during the pendency of Grace's appeal. Upon discharge, Robert's plan ceased to exist and so too did Grace's claim thereunder.

However, as Grace's counsel remarked during oral argument, the matter concerning the propriety of the bankruptcy court's granting the debtor his discharge has been appealed to the United States District Court for the Eastern District of Missouri. It is, then, in every sense, "a live case or controversy." Accordingly, Grace's appeal from the bankruptcy court's approval of Robert's plan modification, the completion of payments thereunder resulting in his discharge, is not moot.

## ii.  The Merits of the Appeal

In order to qualify for approval under the Code, Robert's third proposed plan modification must satisfy the requirements of 11 U.S.C. § 1325(a), which include, inter alia, the "best interests of creditors" test. In her appeal from the bankruptcy court's order confirming Robert's third plan modification, Grace contends that the court erred in disregarding Robert's postconfirmation settlement proceeds when it performed this test. She additionally contends that the court was required, and failed, to perform the "best efforts" test with respect to the settlement proceeds.

Before beginning our discussion of the arguments Grace has presented us, we pause to comment upon the functional concept of "the plan," which informs our application of the Code provisions

and concepts which follow in our decision below.  A debtor's plan in bankruptcy is the vehicle by which he or she achieves fiscal rehabilitation.  For so long as it exists in bankruptcy, there is, at any given time, only one effective plan;  the plan is an unitary constant.  Although the Bankruptcy Code speaks of "the plan" and "the modified plan," it speaks of a solitary construct.  This can only be so, and is inherent in the Code, for the Code speaks of postconfirmation plan alterations exclusively in terms of "modification" thereof.  <u>See</u> 11 U.S.C. § 1329.  The Code thus contemplates change to a plan in bankruptcy in evolutionary terms, incorporating new change into a preexisting basis--an original or previously modified plan.  Thus the Code states, in keeping with the paradigm of the plan as a unitary constant and solitary construct, that  "[t]he plan as modified becomes the plan . . . ." 11 U.S.C. § 1329(b)(2).  An individual who grows from infancy to adulthood alters significantly in the process and yet retains his or her identity throughout;  so, too, does a plan retain its identity and constancy throughout its evolution and development in bankruptcy.  Although it may change with time, it is, in essence, that which it always was--the plan.

Consistent with the notion that there is but a single plan in effect at any given time during the pendency of a bankruptcy case, we would additionally note that there is ordinarily but a single plan confirmation made during the entire course of a bankruptcy case.  The Bankruptcy Code does not provide for the "confirmation" of a modified plan;  rather, the plan as modified becomes the plan if it is not disapproved.  Therefore, a plan is effective when confirmed, and a plan modification is effective when approved.

### a. The Best Interests of Creditors Test

In order to be confirmed, a Chapter 13 plan must satisfy the "best interests of creditors" test, which is found at 11 U.S.C. §

1325(a)(4).  A postconfirmation plan modification must also satisfy this test pursuant to Section 1329(b)(1), which provides that, "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."  11 U.S.C. § 1329(b)(1).

Section 1325(a)(4) provides that,

> (a) Except as provided in subsection (b), the court shall confirm a plan if--
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date . . . .

11 U.S.C. § 1325(a)(4).  Thus, in performing the test, comparison is made between  1) the value of property which unsecured creditors are to receive under the debtor's proposed plan or postconfirmation plan modification, and  2) the net value of unencumbered nonexempt property which would be distributed to those creditors under a hypothetical Chapter 7 liquidation of the debtor's estate.

The language contained within Section 1325(a)(4) concerning the valuation date under the test--"as of the effective date of the plan" and "on such date"--has been the source of significant controversy among courts and commentators alike.  While it is accepted that the statutory language "on such date" refers to "the effective date of the plan," Hollytex Carpet Mills v. Tedford, 691 F.2d 392, 393 (8th Cir. 1982);  First Nat'l Bank of Malden v. Hopwood (In re Hopwood), 124 B.R. 82, 85 (E.D. Mo. 1991) (Chapter 12);  In re Lupfer Bros., 120 B.R. 1002, 1004 (Bankr. W.D. Mo. 1990) (Chapter 12);  In re Bremer, 104 B.R. 999, 1002-08 (Bankr. W.D. Mo. 1989) (Chapter 12);  In re Statmore, 22 B.R. 37, 38 (Bankr. D. Neb. 1982), the issue presently before us is to what

date in time "the effective date of the plan" refers.

The majority of courts within our Circuit which have addressed the application of this language, have determined that it refers to the effective date of the plan as originally confirmed. Zellner, 827 F.2d at 1225; In re Lupfer Bros., 120 B.R. at 1004; In re Hopwood, 124 B.R. at 85; In re Bremer, 104 B.R. at 1002-08. In Hollytex Carpet Mills v. Tedford, 691 F.2d 392, 393 (8th Cir. 1982), however, the Eighth Circuit held that the "effective date of the plan" referred to "the date of the filing on the petition in bankruptcy." Id. at 393 (quoting In re Statmore, 22 B.R. 37, 38 (Bankr. D. Neb. 1982))[7]; see In re Nielson, 86 B.R. 177, 178-79 (Bankr. E.D. Mo. 1988) (Chapter 12).

Yet, despite this conflict, these cases support the proposition that the effective date of the plan is neither determined nor redetermined at the point of postconfirmation modification. Moreover, the courts in Tedford and Statmore, which were faced with application of the best interests of creditors test in the context of postconfirmation modification, expressly rejected the argument that the language of Section 1325(a)(4) refers to a later date. 691 F.2d at 393; 22 B.R. at 38. But see In re Guentert, 206 B.R. 958, 963 (Bankr. W.D. Mo. 1997) ("While there is no specific Code provision so providing, it stands to reason that any property that has become property of the estate post confirmation [sic] must be calculated in the best interest of

---

[7]     We note that support for the Tedford position, which the Eighth Circuit originally drew from Collier's, continues therein. Citing in a footnote Tedford, Statmore, and In re Nielson, Collier's states that, "the deemed chapter 7 liquidation which would have produced the cash payment is based upon the value of the nonexempt property in the estate on the date the petition was filed." 8 L. King, COLLIER ON BANKRUPTCY ¶ 1325.05[2][a], p. 1325-17 (15th ed. rev. 1997).

11

creditor's test before any plan modification can be confirmed.").[8]
This is so, for, as we emphasized in preface to this discussion,
there is only one plan to which the Code refers.  Regarding the
effective date of the plan, there is only one plan.  The effective
date is not altered by modification of the plan, for the modified
plan remains, ever constant, the plan.

Many practical considerations support this conclusion.  In his
Chapter 13 treatise, Judge Keith M. Lundin raises a host of
troubling questions which would be implicated by the fixing of "the
effective date of the plan" as of the date of postconfirmation
modification, including the following:

> What if the debtor acquired no new property but
> property owned at the [original] petition [date] has
> appreciated or depreciated with the passage of time?
> . . . .
> This [question] leads [ ] to the absurd result that a
> Chapter 13 debtor could be required by consecutive
> motions from unsecured claim holders to continuously
> modify the confirmed plan if the debtor owns an asset
> that appreciates after confirmation of each modified
> plan.

---

[8]    It is also possible that the implication that
posteffective postpetition property is included for purposes of
the best interests of creditors test, at any point, has been
overruled by the 1994 amendment to Code Section 348(f)(1)(A).
This section now provides,

> (f)(1) Except as provided in paragraph (2), when a
> case under chapter 13 of this title is converted to
> a case under another chapter under this title--
>      (A) property of the estate in the converted
>      case shall consist of property of the estate,
>      as of the filing of the petition, that
>      remains in the possession of or is under the
>      control of the debtor on the date of
>      conversion . . . .

11 U.S.C. § 348(f)(1)(A).

Lundin, Keith M., CHAPTER 13 BANKRUPTCY, vol. 2, § 6.44 at 6-131 to 132.

Acknowledging the controversy surrounding this statutory language, we note that it is sufficient for the resolution of the issues before us that the Eighth Circuit in Tedford expressly rejected the suggestion that the "effective date of the plan" constitutes the date of postconfirmation modification. We next turn to the issue of what constitutes property of the hypothetical Chapter 7 estate for purposes of comparative analysis under the best interests of creditors test.

The focus of the best interests of creditors analysis rests upon a hypothetical distribution to unsecured creditors under Chapter 7. The more expansive Chapter 13 definition of property of the estate, found at 11 U.S.C. § 1306, is therefore irrelevant to this analysis. See 8 L. King, COLLIER ON BANKRUPTCY ¶ 1325.05[2][a], p. 1325-17 (15th ed. rev. 1997). Instead, Code Section 541 guides the liquidation inquiry, into what would be included in the estate as of the effective date of the plan. See id.; 5 W. Norton, BANKRUPTCY LAW AND PRACTICE § 122:7, p. 122-63 (2d ed. 1995 and Supp. 1997).

This assessment generally includes property which has been listed in the debtor's schedules, but also includes items of property which are not found therein. For instance, Section 541(a)(1) specifically includes as property of the estate, "all legal and equitable interests of the debtor in property," a phrase which is sufficiently broad to include causes of action. Ramsay v. Dowden (In re Central Arkansas Broad. Co.), 68 F.3d 213, 214 (8th Cir. 1995) (per curiam); Apostolou v. Fisher, 188 B.R. 958, 966 (N.D. Ill. 1995). However, in order for a cause of action to be included in property of the estate for the purposes of 11 U.S.C. § 541(a)(1), it must have existed as of the petition date, see Sender v. Buchanan, 84 F.3d 1281, 1285 (10th Cir. 1996); Mixon v. Anderson (In re Ozark Restaurant Equip. Co., Inc.), 816 F.2d 1222,

1224 (8th Cir.), <u>cert. denied sub nom.</u> <u>Jacoway v. Anderson</u>, 484 U.S. 848, 108 S. Ct. 147, 98 L.Ed.2d 102 (1987); <u>Swift v. Seidler (In re Swift)</u>, 198 B.R. 927, 930 (Bankr. W.D. Tex. 1996), and thus, in turn, for purposes of Section 1325(a)(4)'s liquidation analysis.

In the instant matter, the cause of action, from which Robert ultimately received settlement proceeds, arose post-petition. Accordingly, it would not be included in property of the estate for purposes of the liquidation analysis under the best interests of creditors test. Therefore, its existence is irrelevant to the issue of the Chapter 13 plan modification as it was proposed, and to any objection thereto made by Grace.

Thus, in light of the foregoing discussion, it was not error for the bankruptcy court to disregard the settlement in conducting the best interests of creditors test pursuant to Section 1325(a)(4), to the extent that it did so, as it proceeded to approve Robert's third proposed postconfirmation plan modification.

### b. The Best Efforts Test

Grace further contends that the bankruptcy court was required to perform the "best efforts" test before approving Robert's third postconfirmation plan modification. She proposes that Robert's settlement proceeds would be distributable to unsecured creditors pursuant to the test's requirements.

The "best efforts" test, located at 11 U.S.C. § 1325(b), provides in part that,

> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

14

11 U.S.C. § 1325(b)(1)(B)[9];  see Stuart v. Koch (In re Koch), 109 F.3d 1285, 1289 (8th Cir. 1997).

However, it is not certain, and is indeed rather doubtful, that this test applies to postconfirmation plan modifications. Case law on this point is unsettled.  Some courts omit the section from postconfirmation modification requirements.  In re Anderson, 153 B.R. 527, 528 (Bankr. M.D. Tenn. 1993);  In re Moss, 91 B.R. 563, 566 (Bankr. C.D. Cal. 1988).  Others favor its application as a requirement for postconfirmation modification.  In re Guentert, 206 B.R. 958, 963 (Bankr. W.D. Mo. 1997);  In re Jackson, 173 B.R. 168, 171 (Bankr. E.D. Mo. 1994);  In re Klus, 173 B.R. 51, 58 (Bankr. D. Conn. 1994);  and In re Solis, 172 B.R. 530, 532 (Bankr. S.D. N.Y. 1994).

Arguments for exclusion of the test's applicability to postconfirmation plan modifications are made largely based upon its facial omission from Section 1329(b)(1).  Section 1329(b)(1), which contains the requirements of postconfirmation plan modification, provides that "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."  11 U.S.C. § 1329(b)(1).  Additional argument is made that Section 1329(b)(1) is rendered mostly redundant if "all of Chapter 13 becomes applicable

---

[9]    "Disposable income" is defined for purposes of Section 1325(b)(1)(B) as,

> income which is received by the debtor and which is not reasonably necessary to be expended--
>     (A) for the maintenance or support of the debtor or dependent of the debtor; and
>     (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2).

15

at postconfirmation modification by reference to [Section] 1329(b)(1)." Lundin, Keith M., CHAPTER 13 BANKRUPTCY, vol. 2, § 6.45 at 6-134 to 135.

Conversely, arguments for inclusion of the test as a requirement do so under Section 1325(a), which provides in pertinent part, "*Except as provided in subsection (b)*, the court shall confirm a plan if--(1) *the plan complies with the provisions of this chapter* and with the other applicable provisions of this title; . . . ." 11 U.S.C. § 1325(a)(1) (emphasis added). Here, proponents argue that Section 1325(b) is implicated by either Section 1325(a)'s preface, "[e]xcept as provided in subsection (b)" or by Section 1325(a)(1)'s blanket application of the chapter provisions, "the plan complies with the provisions of this chapter."

Though they suggest that it must have been Congress' intent to apply the test to the requirements for postconfirmation plan modifications, leading bankruptcy treatises acknowledge a "failure" or "oversight" on Congress' part to do so by not including Section 1325(b) in those requirements, which are listed in Section 1329(b).[10] We agree that Congress omitted Code Section 1325(b) in the requirements for postconfirmation plan modification, and further, decline to take its prerogative as our own.

---

[10] The Norton treatise provides, "Code § 1329(b) does not apply all of the confirmation requirements to a modified plan that would be applicable to an original Chapter 13 plan. . . . The failure to include Code § 1325(b) in the list of sections applicable to postconfirmation modification under Code § 1329(b) is probably legislative oversight." 5 W. Norton, BANKRUPTCY LAW AND PRACTICE § 124:2, p. 124-10 (2d ed. 1995 and Supp. 1997).

Collier's, in turn, states that, "Section 1329(b)(1) directs that a chapter 13 plan modified after confirmation is subject to all criteria for the confirmation of an original chapter 13 plan as prescribed by section 1325(a). . . . The omission of section 1325(b) from the list in section 1329(b)(1) was probably a legislative oversight." 8 L. King, COLLIER ON BANKRUPTCY ¶ 1329.05[3], pp. 1329-9-10 (15th ed. rev. 1997).

16

We note that our conclusion is supported by the absurd result which would have obtained had the best efforts test been applied under these facts. Once more, Judge Lundin has presaged the perils opened to debtors in these matters, with the following:

> Application of the disposable income test at confirmation of a modified plan is at least confusing and may render many postconfirmation modifications impossible altogether. . . . [C]ounting the three-year period in the disposable income test from the date the first payment is due under the *modified* plan would preclude approval of modification of a plan that is already more than two years old. Section 1329(c) clearly states that the court may not approve a modified plan that calls for payments after five years after the first payment was due under the original confirmed plan. . . . Mathematically, no proposed modified plan can satisfy both the disposable income test in § 1325(b) and the five-year limitation in § 1329(c) if the proposed modification is filed after two years after the commencement of payments under the original plan.

Lundin, Keith M., CHAPTER 13 BANKRUPTCY, vol. 2, § 6.45 at 6-136 to 137.

We thus conclude that the "best efforts" test is not a factor to be considered by a court in approving postconfirmation modifications. There is only one plan from which the test's three years run. Under the facts before us, Robert's settlement proceeds, having been received outside these time parameters for the test, are irrelevant to any calculation thereunder. Therefore Robert met the requirements of Code Section 1325(b)(1)(B) by devoting to the plan all of his disposable income in the three-year period beginning on the date his first payment fell due under the originally confirmed plan, and the bankruptcy court did not err in either rejecting application of this test to Robert's third proposed plan modification, or in rejecting the settlement proceeds for inclusion thereunder. The Bankruptcy Code requires no more from Robert than the performance he has already rendered.

17

## B. Approval of the Property Sale

### i. Motion to Dismiss as Moot

Robert argues that Grace's appeal from the court's denial of her motion for reconsideration is moot because she failed to seek and obtain a stay of the sale order pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure. As of this date, Grace has failed to move for a stay of the court's April sale order (there having been at least two prior sale orders of, and one notice of intent to sell, the Salisbury Street property).

At this time, we have before us no definitive information concerning the sale status of Robert's property. The record on this point merely indicates that: (1) Robert entered into a contract for sale of the property, contingent upon court approval, with Mrs. Doris Spann in March 1997; (2) Robert moved to permit this sale; (3) a notice of the motion to sell issued (although Grace contends she did not receive such notice); (4) the court granted Robert's motion; (5) Grace moved the court to reconsider its sale decree; and (6) the court denied Grace's motion. At oral argument, Robert informed the court that as of that date (October 9, 1997), the sale had not occurred and that he was still willing to give the property to Grace.

Robert's mootness argument is based largely upon Rule 8005 of the Federal Rules of Bankruptcy Procedure. Rule 8005 originates from, and supports, bankruptcy's finality rule, which consists of both statutory and judicially-created counterparts. A full discussion of the finality rule is warranted here, for it is under this rule, along with Bankruptcy Rule 8005, that Grace's appeal may indeed be moot.

The finality rule in bankruptcy "applies when an appellant has failed to obtain a stay from an order that permits a sale of the debtor's assets[. . . ., and] dictates that the appellant's failure to obtain a stay moots the appeal." <u>Onouli-Kona Land Co. v. Estate</u>

18

of Richards (In re Onouli-Kona Land Co.), 846 F.2d 1170, 1171 (9th Cir. 1988);  see 255 Park Plaza Assocs. Ltd. Partnership v. Connecticut Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. Partnership), 100 F.3d 1214, 1216 (6th Cir. 1996);  In re CGI Indus., Inc., 27 F.3d 296, 299-300(7th Cir. 1994).

This rule originated as "a judicial doctrine which developed from the general rule that the occurrence of events which prevent an appellate court from granting effective relief renders an appeal moot, and the particular need for finality in orders regarding stays in bankruptcy."  Algeran v. Advance Ross Corp., 759 F.2d 1421, 1423-24 (9th Cir. 1985);  see In re 255 Park Plaza Assocs. Ltd. Partnership, 100 F.3d at 1216;  Sullivan Cent. Plaza, I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza, I, Ltd.), 914 F.2d 731, 734 (5th Cir. 1990).

The original codification of the judicial rule, in what was former Bankruptcy Rule 805, was subsequently fragmented, and its application limited, when Congress revised the Bankruptcy Code and Rules.  This revision resulted in the enactment of Bankruptcy Rule 8005 and the concomitant incorporation of Bankruptcy Rule 805's mootness provision into the Bankruptcy Code, 11 U.S.C. § 363(m). Algeran, 759 F.2d at 1423-24;  Plotner v. AT&T, 172 B.R. 337, 340-41 (D. W.D. Okla. 1994);  see also In re 255 Park Plaza Assocs. Ltd. Partnership, 100 F.3d at 1217 (codification of mootness rule in Section 363(m)).

Section 363(m) is limited in application to trustee sales of debtor property.[11]  11 U.S.C. § 363(m);  see In re Onouli-Kona Land

---

[11]    Bankruptcy Code Section 363(m) provides that,

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless

19

Co., 846 F.2d at 1172; <u>In re 255 Park Plaza Assocs. Ltd.</u> <u>Partnership</u>, 100 F.3d at 1217; <u>Miami Ctr. Limited Partnership v.</u> <u>Bank of New York</u>, 838 F.2d 1547, 1553 (11th Cir. 1988). However, the judicial mootness doctrine survives in situations other than those provided for by Section 363(m). <u>Miami Ctr. Ltd. Partnership</u>, 838 F.2d at 1553; <u>Pittsburgh Food & Beverage, Inc. v. Ranallo</u>, 112 F.3d 645, 648 (3d Cir. 1997); <u>In re 255 Park Plaza Associates Ltd.</u> <u>Partnership</u>, 100 F.3d 1217; <u>Rochman v. Northeast Utils. Serv.</u> <u>Group (In re Public Serv. Co. of New Hampshire)</u>, 963 F.2d 469, 472 (1st Cir.), <u>cert. denied</u>, 506 U.S. 908, 113 S. Ct. 304, 121 L.Ed.2d 226 (1992); <u>Anheuser-Busch, Inc. v. Miller (In re Stadium</u> <u>Management Corp.)</u>, 895 F.2d 845, 848 (1st Cir. 1989)(citing cases); <u>In re Highway Truck Drivers & Helpers Local Union 107</u>, 888 F.2d 293, 297 (3d Cir. 1989); <u>Algeran</u>, 759 F.2d at 1423-24. "Therefore, . . . unless a stay is obtained, an order approving a sale of property will not be affected on appeal." <u>Plotner</u>, 172 B.R. at 340-41.

Bankruptcy Rule 8005[12], although discretionary in nature, is

---

> such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

[12] Rule 8005 provides in part that,

> A motion for a stay of the judgment, order, or
> decree of a bankruptcy judge, for approval of a
> supersedeas bond, or for other relief pending appeal
> must ordinarily be presented to the bankruptcy judge
> in the first instance. Notwithstanding Rule 7062 but
> subject to the power of the district court and the
> bankruptcy appellate panel reserved hereinafter, the
> bankruptcy judge may suspend or order the
> continuation of other proceedings in the case under
> the Code or make any other appropriate order during
> the pendency of an appeal on such terms as will
> protect the rights of all parties in interest.

20

consistent with, and supports, the codal and judicial counterparts of the mootness rule.  As the Court of Appeals for the Second Circuit describes,

> Bankruptcy Rule 8005 sets forth a procedure by which a party may seek a general stay of a bankruptcy court's order pending appeal so that the estate and the status quo may be preserved pending resolution of the appeal.  The party who appeals without seeking to avail himself of that protection does so at his own risk.

In re Chateaugay Corp., 988 F.2d at 326;  see In re Continental Airlines, 91 F.3d 553, 562 (3d Cir. 1996), cert. denied, --- U.S. ---, 117 S. Ct. 686, 136 L.Ed.2d 610, reh'g denied, --- U.S. ---, 117 S. Ct. 1098, 137 L.Ed.2d 230 (1997);  Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (D. S.D. N.Y. 1994) (quoting same); cf. In re Ewell, 958 F.2d at 278-79 (debtor's appeals rendered moot pursuant to Bankruptcy Rule 8005 by reason of her failure to obtain a stay pending appeal of bankruptcy court's approval of sale of two parcels of real estate).

Case law on this subject as developed by the Court of Appeals for the Eighth Circuit is consistent with the above discussion.  In a line of decisions addressing mootness in the context of bankruptcy, the Eighth Circuit has adhered to the finality rule--both the judicial doctrine as well as the codified rule--as it pertains to the sale of debtor property to third parties.  See Metro Property Management Co. v. Information Dialogues, Inc. (In re Information Dialogues), 662 F.2d 475, 477-78 (8th Cir. 1981);  Van Iperen v. Production Credit Assoc. (In re Iperen), 819 F.2d 189, 191 (8th Cir. 1987);  Roller v. Worthen Nat'l Bank of Northwest (In re Roller), 999 F.2d 346, 347 (8th Cir. 1993).

---

FED. R. BANKR. P. 8005.

Therefore, under the weight of the case law previously discussed, it is clear that if indeed the property has already been sold, Grace's appeal in this regard is rendered moot. We cannot say it is so, however, for as noted, we do not have before us evidence to this effect; the question of the sale status of the Salisbury Street property is an open one.

Irrespective of whether mootness might rest on this basis, however, Grace's appeal is rendered moot for another reason entirely, to wit, that her lien survived the bankruptcy proceedings in the lower court intact. The bankruptcy court's order permitting the sale of Robert's property did not provide for a sale free and clear of interests pursuant to 11 U.S.C. § 363(f). Thus, the property was authorized to be sold, but sold subject to Grace's lien. Accordingly, we conclude that Grace's lien survived the debtor's bankruptcy proceedings wholly intact and unaffected, and that her appeal in this respect is therefore moot.

Accordingly, the orders appealed from are affirmed.


A true copy.


Attest.


CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT.

22