**In re POPKIN & STERN, Debtor.**

**Robert J. Blackwell, Liquidating Trustee of the Popkin & Stern Liquidating Trust, Plaintiff–Appellee,**

v.

**Michael Lurie and Ryan Lurie, Defendants–Appellants,**

**Ronald U. Lurie, Defendant.**

**BAP No. 98–6082EM.**

United States Bankruptcy Appellate Panel of the Eighth Circuit.

Submitted March 25, 1999.

Decided May 17, 1999.

Stanley E. Goldstein, St. Louis, MO; Eli Karsh, St. Louis, MO, on the brief, for appellant.

James B. Day, St. Louis, MO; Serall Chezem, Ofallon, MO, on the brief, for appellee.

Before KRESSEL, WILLIAM A. HILL, and SCOTT, Bankruptcy Judges.

KRESSEL, Bankruptcy Judge.

Michael and Ryan Lurie appeal from the August 18, 1998, order and judgment of the bankruptcy court[1] holding that their father, Ronald U. Lurie, fraudulently transferred real property to them and that, as a result, the transfer was void and the trustee could avoid the transfer. For the reasons set forth below, we affirm the judgment of the bankruptcy court.

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Johnson v. Border State Bank (In re Johnson)*, 230 B.R. 608, 609 (8th Cir. BAP 1999); *Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523, 525 (8th Cir.1998).

## Background[2]

The debtor was a law firm and Ronald Lurie was its managing partner. When forced into bankruptcy by an involuntary petition, the debtor converted to a case under Chapter 11. A plan was confirmed on August 27, 1993, under which Blackwell was appointed liquidating trustee. Blackwell subsequently prevailed in an adversary proceeding against Ronald, and judgment was entered against him and in favor of Blackwell in the amount of $1,121,743.

The subject of this appeal is the bankruptcy court's disposition of the adversary proceeding brought by Blackwell against Ronald and his two adult sons, Michael and Ryan. Michael and Ryan each owned an undivided ¼ interest in a piece of real property known as the Clayton Road property. Blackwell contends that Michael and Ryan became owners of the property by the fraudulent transfers to them from their father, Ronald, who inherited an undivided ½ interest in the property from his mother, Edna Lurie. Michael and Ryan argue that Ronald executed a valid disclaimer of any interest in property of Edna's estate, and that therefore the interest in the Clayton Road property passed by devise directly to Michael and Ryan, as if their father, Ronald, had predeceased his mother.

The bankruptcy court, having determined that the settlement agreement between the parties was not going to close,[3] held a trial on the merits of the adversary proceeding and determined that Ronald's disclaimer was void and, as a result, that he fraudulently transferred his interest in the Clayton Road property to his sons, Michael and Ryan.

On December 22, 1998, Ronald's interest in the Clayton Road property was sold at a

1. The Honorable Karen M. See, United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

2. For more background on the Popkin and Stern bankruptcy, see our earlier opinion in *Blackwell v. Lurie (In re Popkin & Stern)*, No. 97-6091EM, slip op. (8th Cir. BAP Mar. 5, 1998) (unpublished), *aff'd, Blackwell v. Lurie (In re Popkin & Stern)*, 168 F.3d 494, 1998 WL 953993 (8th Cir.1998) (unpublished).

3. The bankruptcy court disposed of the settlement agreement issues, holding that the agreement did not and would not close and could not be enforced against some but not all of the parties, in an order dated January 18, 1996, which was not appealed. The bankruptcy court issued its final order in the adversary proceeding on its merits, the subject of the present appeal, on August 18, 1998.

valid execution sale by the Sheriff of St. Louis County pursuant to the money judgment Blackwell had obtained earlier against Ronald.

### Mootness -

■ Blackwell has moved to dismiss this appeal arguing that it is moot due to the sale of the property to an unrelated third party and the failure of the appellants to seek and obtain a stay pending appeal. An appeal is moot when it is impossible for the court to grant "any effectual relief whatever" to a prevailing party. *See Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992), quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895). An appeal is moot when the reviewing court is incapable of restoring the parties to their original position. *Id.*, cited in *Egbert Development, LLC v. Community First Nat'l Bank (In re Egbert Development, LLC)*, 219 B.R. 903, 905 (10th Cir. BAP 1998). See also *See Roller v. Worthen Nat'l Bank of Northwest Arkansas (In re Roller)*, 999 F.2d 346, 347 (8th Cir.1993); *Ross v. Strauss (In re Ross)*, 223 B.R. 702, 704 (8th Cir. BAP 1998). -

■ Mootness arises frequently in the context of bankruptcy when property is sold or relief from stay is granted and foreclosure proceedings move ahead. In those cases, an appeal is almost always moot because a stay pending appeal was not obtained and the property at issue has been transferred to a good faith, third party purchaser. *See Van Iperen v. Production Credit Ass'n of Worthington–Slayton Branch (In re Van Iperen)*, 819 F.2d 189, 190–91 (8th Cir.1987) (when debtor fails to obtain a stay pending appeal and collateral is taken and converted into cash, no court is able to formulate adequate relief to the debtor). Even when the good faith purchaser is also the creditor, the appeal is moot. *See Lang v. Farmers Home Admin.*, 48 F.3d 1224, 1995 WL 74499 (8th Cir.1995) (unpublished decision).

In *Forbes v. Forbes (In re Forbes)*, 215 B.R. 183, 192–94 (8th Cir. BAP 1997), we defined the mootness doctrine as a statutorily and judicially created finality rule based upon "the occurrence of events which prevent an appellate court form granting effective relief ... and the particular need for finality in orders regarding stays in bankruptcy," and we held that the rule applies in situations other than bankruptcy trustee sales of debtor property. We held that "unless a stay is obtained, an order approving a sale of property will not be affected on appeal." *Id.* at 193, citing *Plotner v. AT & T*, 172 B.R. 337, 340–41 (W.D.Okla.1994). We found that "Bankruptcy Rule 8005[ ], though discretionary in nature, is consistent with, and supports, the codal and judicial counterparts of the mootness rule." *Forbes*, 215 B.R. at 193.

The mootness issue arises overwhelmingly, however, in the context of the bankruptcy court granting relief from the automatic stay in order for a secured creditor to pursue a foreclosure of the debtor's real property collateral, or when the bankruptcy court issues an order approving a bankruptcy trustee's sale of estate property pursuant to 11 U.S.C. § 363. *See, e.g., United States v. Fitzgerald*, 109 F.3d 1339, 1342–43 (8th Cir.1997); *Perry v. Secretary of Housing and Urban Dev. (In re Perry)*, 223 B.R. 167, 169–70 (8th Cir. BAP 1998); *Prasil v. Dietz (In re Prasil)*, 215 B.R. 582, 584 (8th Cir. BAP 1998).

■ Blackwell was not a foreclosing creditor and not a bankruptcy trustee. He was appointed solely to liquidate the debtor pursuant to the confirmed plan. When Ronald breached his obligation under the plan, Blackwell obtained a judgment against him. Accordingly, Blackwell is a judgment creditor of Ronald. The sale that occurred here was not a foreclosure sale, relief from stay, or an order approving the sale of the Clayton Road property. In fact, it was not a bankruptcy sale at all. It was a sale by the sheriff under Missouri

law in an attempt to partially satisfy Blackwell's judgment against Ronald.

The adversary proceeding before the bankruptcy court determined that Ronald's purported disclaimer was void, the transfer to Michael and Ryan was fraudulent, and that the Clayton Road property was owned by Ronald and his brother Robert Lurie, each holding an undivided one half interest, as tenants in common. The sale of Ronald's interest in the Clayton Road property subsequently occurred pursuant to a valid execution sale by the county sheriff. We think that this situation is readily distinguishable from creditor foreclosures and other court approved sales cases.

The finality interests underlying the mootness rule in cases of court approved sales and orders granting relief from the automatic stay are not implicated by an execution sale on a judgment, even though the judgment resulted from an adversary proceeding in bankruptcy. Moreover, the court is not without the ability to grant effective relief. The proceeds of the execution sale are actually available, unlike the proceeds from the foreclosure sale of a homestead which cannot adequately remedy a debtor who failed to obtain a stay pending appeal because the proceeds are applied against the debtor's debt on the mortgage.

In a foreclosure sale of property securing a debt, the property is gone and the proceeds of the sale are gone. Here money is available. If we should determine that the bankruptcy court was wrong in avoiding the transfer to Michael and Ryan, we could probably not undo the execution sale, but we could require the proceeds to be paid to Michael and Ryan as compensation for their interests in the property. This is enough to keep the appeal from being moot.

4.  Blackwell states in his brief that the Clayton Road property (Bob–Ron Acres, as he refers to it) was part of the Lurie Family Trust. It was not. The property was part of Edna's estate, as indicated by the ownership information in the appraisal obtained by Ronald in

### The Disclaimers

Peter Lurie died in 1977. At the time of his death, the Clayton Road property was owned by Peter and Edna Lurie as tenants in the entirety. As a result of Peter's death, Edna became the sole owner of the property. This was evidenced in 1982 by an affidavit as to tenancy by entireties. Edna died on December 26, 1991. By her will, Edna devised her estate, including the Clayton Road property, to her sons Ronald and Robert, equally.[4]

■ Ronald executed two purported disclaimers of his interest in his deceased mother's property. Under Missouri law, a disclaimer is valid and may be enforced if it: 1) is in writing; 2) identifies the transfer being disclaimed; 3) is signed by the disclaimant; and 4) is received, within nine months after the effective date of the transfer, by the transferor or the transferor's legal representative, or the holder of legal title to the property to which the interest or power being disclaimed related. See R.S.Mo. § 474.490.1(2). The effective date of Edna's transfer of her Clayton Road property was December 26, 1991, the date she died.

■ Ronald's first purported disclaimer disclaimed "any interest" in the Lurie Family Trust and the estate of Edna Lurie. The second disclaimer disclaimed any interest in real property owned by the estate of Edna Lurie. Both disclaimers were in writing and signed by Ronald, both identify the transfers being disclaimed, and both were executed on January 1, 1992, well within nine months after the effective date of the transfer, or within nine months after Edna's death. Ronald was the personal representative of his mother's estate. He therefore was the

1992, by the purported deed of distribution executed by Ronald in his capacity as personal representative of his mother Edna's estate, and by the inventory of the estate and the proposed distribution schedules admitted to the probate court.

legal representative of the transferor of the Clayton Road property and in that capacity he received both disclaimers at the moments of their execution. Accordingly, for purposes of the Clayton Road property which was part of Edna's estate, both disclaimers appear valid *prima facie.*[5]

However, Missouri law also provides: "A disclaimer may not be made under this section with respect to any transfer, or part thereof, which the disclaimant has accepted," and that "[f]or purposes of this subsection, a person accepts a transfer if such person voluntarily transfers or encumbers, or contracts to transfer or encumber, all or a part thereof, or executes a written waiver of the right to disclaim, or receives benefits from the transfer, or otherwise indicated acceptance of the transfer . . . ." *See* R.S.Mo. § 474.490.5. The record unequivocally demonstrates that Ronald, in spite of his purported and otherwise valid disclaimers to the contrary, in fact accepted numerous transfers from his mother's estate and from the Lurie Family Trust, thereby rendering both disclaimers void.

On January 22, 1992, less than one month after executing the purported disclaimers, Ronald executed and filed with the probate court a petition for probate of will and for letters testamentary naming Peter, Robert and Ronald as legatees. The petition disclosed that Peter predeceased Edna, but it did not disclose that Ronald had purportedly disclaimed his interest in Edna's estate three weeks earlier. If he truly intended to disclaim his interest, Ronald would have disclosed his disclaimers in the petition, just as any personal representative would have disclosed the predecease of a named legatee and as he did do with respect to Peter, and he would have therein indicated Michael and Ryan as legatees in his stead pursuant to the terms of the will.

On February 5, 1992, over a month after Ronald had purportedly disclaimed his interest, Ronald and Robert filed with the probate court a request that their shares under Edna's will be paid to them free from trust because they were each over the age of 40 and therefore pursuant to the will a spendthrift trust was not required.

On the same day, Ronald and Robert each filed consents to the independent administration of Edna's estate, but none were filed by Michael or Ryan. If Ronald had disclaimed his interest in real estate, the consent of Michael and Ryan was required. Also on the same day, Ronald was appointed personal representative of Edna's estate and authorized by the probate court to independently administer the estate.

On December 30, 1993, Ronald and Robert directed Oppenheimer & Co. Inc., to divide the assets of the Edna Lurie Investment Club, as asset of Edna's estate, equally between them. On January 13, 1994, Ronald received half of those assets, or approximately $63,000. On February 15, 1994, Robert paid Ronald $11,437 for his half of May Company stock in Edna's estate. On February 17, 1994, another $7,500 was paid to Ronald from the sale of bonds issued by the Housing Authority of the City and County of San Francisco and deposited into the Edna Lurie Investment Club. The proceeds of a sale of Edna's personal and household belongings also were distributed to Ronald and Robert, and Edna's jewelry was divided between them and Nancy Lurie, Ronald's wife.

Ronald's acceptance of assets from the Lurie Family Trust is also inconsistent with his purported disclaimers. When Edna died, Ronald and Robert became

---

**5.** The prima facie validity of the disclaimers as to transfers from the Lurie Family Trust is another matter because Ronald and Robert were co-trustees of the Trust and therefore they were both the transferor's legal representatives and holders of legal title to trust prop- erties. Robert did not receive Ronald's disclaimer relating to the Trust within nine months after Edna's death. However, this fact is of no moment because the Clayton Road property at issue in this case was part of Edna's estate, not the Lurie Family Trust.

entitled to request and receive the assets held in the Lurie Family Trust, free from trust and in equal shares. On December 30, 1993, Ronald and Robert requested that a Lurie Family Trust account containing stocks and cash be closed and distributed to them equally. On January 17, 1994, Ronald and Robert requested another Lurie Family Trust account be closed and distributed to them equally, and Ronald thereafter received approximately $72,500. On March 2, 1994, Robert paid $90,000 to Nancy for Ronald's 50% interest in Lurie Home Supply Center stock held by the Lurie Family Trust.

That these acts and transfers constitute acceptances by Ronald of interests of the estate or held by the trust, and thereby invalidate the purported disclaimers, is manifest. The appellants argue, however, with respect to the Clayton Road property, that Ronald never held title to the property and that therefore the property descended to Michael and Ryan by the disclaimers because Ronald could not transfer something which he never held. We find no merit to this argument.[6]

The Missouri statute does not contemplate the efficacy of a disclaimer to apply to anything more than a single transfer. On the contrary, the statute consistently refers simply to the transfer being disclaimed. There is no provision made for the divisibility of a transfer governed by a disclaimer. In fact, the subsection of the statute addressing invalidity of a disclaimer based on acts of acceptance of a transfer specifies that acceptance of any part of the transfer makes the disclaimer void. The statute leaves the responsibility of defining the transfer, either narrowly or broadly, to the disclaimant.

In Ronald's first disclaimer, the transfer being disclaimed is his interest in his mother's estate and his interest in the Lurie Family Trust. His disclaimer included no exceptions. For example, he did not disclaim all property of his mother's estate except May Company stock and proceeds from the investment club. Ronald repeatedly represented himself to the probate court as a legatee under the estate and a beneficiary under the trust and he received benefit therefrom. The first disclaimer is void and of no effect on Ronald's inherited interest in the Clayton Road property.

In Ronald's second disclaimer, the transfer being disclaimed is restricted to his interest in real property of his mother's estate. It is true that Ronald never took record title to the Clayton Road property. Nevertheless, he engaged in numerous acts sufficient to demonstrate acceptance such that the second disclaimer is also void and of no effect on his inherited interest in the Clayton Road property. In addition to listing himself as a legatee under Edna's will, failing to disclose his purported disclaimer, and failing to include Michael and Ryan as the appropriate legatees in numerous documents submitted under oath to the probate court, the testimony of Michael and Ryan clearly demonstrates that Ronald never had any intention of disclaiming any of his interests as a legatee or beneficiary. Neither Michael nor Ryan could articulate the what, when or why about their inheritance from Edna.

Ronald contended that he and his wife had borrowed the disclaimed inheritance from their sons. However, no one, including Michael and Ryan, could describe or document the alleged loan, its amount, or its terms. Nancy also testified that she was not aware that she and Ronald had borrowed the inheritance from Michael and Ryan.

In August, 1992, after the involuntary bankruptcy against Popkin & Stern was well underway, Ronald filed a financial statement which failed to disclose any as-

6. Appellants also argue that there is no legal support for the contention that a valid disclaimer becomes invalid when the disclaimant later accepts property which he has disclaimed. We also find this argument meritless. The statute is clear that acceptance invalidates a disclaimer.

sets which he claims to have borrowed from his sons. Moreover, neither did the statement disclose Ronald's alleged liabilities to his sons for the supposedly impending loan from them of that inheritance which he purportedly disclaimed.

Moreover, the disclaimers, though dated January 1, 1992, did not appear to anyone other than Ronald, the purported disclaimant, until shortly after the involuntary petition against Popkin & Stern was filed in late March, 1992, and almost immediately after the bankruptcy court granted the complaint for injunctive relief sought by Popkin & Stern's "sponsoring partners," including Ronald, in September 1992, to give them time to formulate a plan of reorganization.

In late September, Ronald knew that he was going to liable as a sponsoring partner in the reorganization of the law firm. Not surprisingly, he delivered the disclaimers on September 24, 1992, to William Drennan, the attorney for Edna's estate. Only thereafter did all probate documents filed by Ronald show Michael and Ryan as ¼ interest legatees and beneficiaries under the estate and trust. Edna's estate tax return filed on September 28, 1992, provides that Ronald disclaimed his inheritance and identifies Michael and Ryan as the legatees and beneficiaries. Nevertheless, in his second financial statement in the bankruptcy case, Ronald again did not disclose the existence of Edna's estate, the Lurie Family Trust, or his purportedly disclaimed interests therein, and still failed to disclose his liabilities to his sons for borrowing his disclaimed inheritance.

On June 7, 1994, just seven days after Blackwell learned of Edna's estate, Ronald filed, as personal representative of Edna's estate, the deed of distribution transferring ¼ interests in the Clayton Road property to Michael and Ryan. On June 13, 1994, Ronald filed, under penalty of perjury, the final statement of account and pro-posed distribution of Edna's estate and indicated that the property of the estate including household and personal belongings, furniture, and jewelry was on hand to be distributed ½ to Robert and ¼ each to Michael and Ryan. The final statement also provided that the Edna Lurie Investment Club and May Company proceeds would also be distributed ½ to Robert and ¼ each to Michael and Ryan. Of course, all of those assets of the estate had already been distributed ½ each to Ronald and Robert months earlier in late 1993 and early 1994.

We agree with the bankruptcy court that both disclaimers are invalid due to Ronald's multiple acts of acceptance contrary to both disclaimers. In addition, we agree that the disclaimers were a sham designed solely for the purpose of hiding the assets of the Lurie Family Trust and Edna's estate, including the clayton Road property, from Ronald's creditors, and that he did in fact accept the transfers and never intended otherwise.[7]

These facts and others found by the bankruptcy court in its detailed decision are amply supported by the record and are not clearly erroneous. Because the disclaimers were invalid and Ronald therefore inherited his interest in the Clayton Road property as devised by Edna's will, the transfer of the Clayton Road property to Michael and Ryan obviously constituted a fraudulent conveyance. See R.S. Mo. § 428.024. The transfer was to insiders for no consideration in order to hide the asset from a specific judgment creditor.

*The Settlement Agreement*

■ Lastly, the appellants argue that Blackwell is bound by the terms of the global settlement agreement negotiated by Blackwell and Ronald, Nancy, Michael and Ryan Lurie and approved by the bankruptcy court. Essentially the appellants

---

7. In fact, while such a finding was unnecessary in light of the bankruptcy court's decision, the facts would easily support a finding that the disclaimers, even if valid under Missouri law, would themselves be fraudulent transfers.

argue that because Blackwell and Michael and Ryan signed the agreement, it should be enforced as to them, which would result in a release of judgment against Ronald, even though no Lurie party would have performed under the agreement. The bankruptcy court properly found that the agreement was intended to settle all the issues among all the parties, and that if all the Luries could not fulfill their obligations under the agreement, then it was not appropriate or required for Blackwell to close with any of the Luries.

Moreover, we have already considered and determined this very argument. *See Blackwell v. Lurie (In re Popkin & Stern)*, No. 97–6091EM, slip op. (8th Cir. BAP Mar. 5, 1998) (unpublished), *aff'd, Blackwell v. Lurie (In re Popkin & Stern)*, 168 F.3d 494, 1998 WL 953993 (8th Cir.1998) (unpublished). Ronald argued that the settlement agreement released him from any liability on the judgment against him because, even though he was unable to and did not perform his obligations under the agreement, the settlement constituted three independent agreements as to Ronald, Nancy, and Michael and Ryan, and that each or any of the agreements resulted in a release of judgment against Ronald whether or not all the obligations of all the parties were actually satisfied under the terms of the agreement. Ronald argued that the language of the agreement provided for mutual releases among the parties as of the closing date regardless of the performance of the parties pursuant to their obligations under the settlement agreement. The closing date came and went without performance by any of the parties, as the bankruptcy court knew in advance that it would.

We held that "the closing date is intended to be an indication of an obligation to close on or within a certain time, but has no independent effect on its own," and that "nothing in the settlement agreement between the parties constituted a release or a satisfaction of that judgment." *Id.* Appellants argument is merely an attempt to revive this same argument. The Court of Appeals affirmed our decision without discussion. See *Blackwell v. Lurie (In re Popkin & Stern)*, 168 F.3d 494, 1998 WL 953993 (8th Cir.1998) (unpublished). This issue has been decided and it warrants no further attention, lest it be to consider Rule 9011 sanctions.

### Conclusion

Because the appeal is not moot, Blackwell's motion to dismiss the appeal is denied. Ronald Lurie's purported disclaimers were void in light of his multiple acts of acceptance of the transfers he pretended to disclaim. His purpose was clearly to defraud his creditors, namely to hide his interests in the Edna Lurie estate and the Lurie Family Trust from Blackwell. As a consequence, the transfer of the Clayton Road property was a fraudulent conveyance. Accordingly, we affirm the judgment of the bankruptcy court.