# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2511

_____

In re:  Popkin & Stern,

     Debtor.

--------------------------------------

Robert J. Blackwell, Liquidating
Trustee of the Popkin & Stern
Liquidating Trust,

     Appellee,

  v.

Michael Lurie, Ryan Lurie,

     Appellants,

Ronald U. Lurie,

     Defendant.

* Appeal from the United States
* Bankruptcy Appellate Panel

_____

Submitted:  May 11, 2000
Filed:  August 15, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and LOKEN, Circuit Judges.

_____

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.  The opinion is consistent with Judge Gibson's vote at conference.

_____

BOWMAN, Circuit Judge.

Before us is another matter arising from the bankruptcy of Popkin & Stern (P&S), a Missouri law firm in which Ronald Lurie was a general partner. Ronald's sons, Michael and Ryan Lurie, appeal the decision of the Bankruptcy Appellate Panel (BAP), affirming the decision of the Bankruptcy Court, that an interest in certain real property was fraudulently transferred to them by their father and thus could be reached by the bankruptcy trustee and sold for the benefit of P&S's creditors. Michael and Ryan contend that they received the property by the operation of a lawful disclaimer, and not through a fraudulent transfer, and that they are entitled to compensation for their loss of it. Concluding that at least one of the disclaimers executed by Ronald is facially valid and enforceable, we reverse and remand.

We apply the same standards as the Bankruptcy Appellate Panel, reviewing the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. See Official Plan Comm. v. Expeditors Int'l (In re Gateway Pac. Corp.), 153 F.3d 915, 917 (8th Cir. 1998).

I.

At issue is a piece of real property, known as the Clayton Road property, that belonged to Edna Lurie, Ronald's mother and Michael and Ryan's grandmother. Edna died on December 26, 1991, leaving an estate consisting of the Clayton Road property and various other assets. Edna's last will and testament named Ronald as the executor and, along with his brother Robert, as a co-trustee of all trusts created under her will. Edna's will provided that upon her death, her sons Ronald and Robert were the intended beneficiaries of her estate, sharing equally. If, on the other hand, Ronald predeceased Edna, Michael and Ryan would be entitled to Ronald's share of Edna's estate.

Shortly after Edna's death, Ronald executed two disclaimers. The first disclaimer, dated January 1, 1992, and signed "Ronald U. Lurie," states "I hereby disclaim any interest I may otherwise have in The Lurie Family Trust and the Estate of Edna W. Lurie" (General Disclaimer). A second disclaimer, identically dated and signed, states more specifically, "I hereby disclaim any interest I may otherwise have in the real property owned by the Estate of Edna Lurie" (Real Property Disclaimer). It is undisputed that the only real property owned by Edna's estate was the Clayton Road property.

On January 22, 1992, Edna's will was admitted to probate and shortly thereafter the probate court appointed Ronald as personal representative of Edna's estate and authorized independent administration. At some point between Edna's death and September 1994, Ronald received jewelry from Edna's estate. In early 1994, Ronald received the proceeds from the sale of certain investments held by the Lurie Family Trust. There are competing theories about whether these funds were distributed to Ronald in contravention of the General Disclaimer (as the Bankruptcy Court concluded), or whether they merely were loaned to Ronald by Michael and Ryan (as Michael and Ryan contend).

Of particular importance here, on June 7, 1994, Ronald, in his capacity as the personal representative of Edna's estate, executed a deed of distribution allotting the Clayton Road property to Robert, Michael, and Ryan as tenants in common, with Robert receiving an undivided one-half interest and Michael and Ryan each receiving an undivided one-quarter interest. Ronald never received title to the Clayton Road property nor took possession of it.

Meanwhile, on March 26, 1992, an involuntary Chapter 7 petition for relief was filed against P&S; soon thereafter, the case was converted to Chapter 11. In August 1994, the bankruptcy trustee brought a core adversary proceeding, under 28 U.S.C. § 157(b)(2) (1994), seeking a declaration that Ronald's purported disclaimers were

invalid and that Michael and Ryan received the Clayton Road property from their father through a fraudulent transfer in violation of Mo. Rev. Stat. § 428.024 (1994), a provision of Missouri's Uniform Fraudulent Transfer Act (UFTA). The bankruptcy trustee sought to invalidate the purported transfer and to liquidate this one-half interest in the Clayton Road property.

Following a trial, the Bankruptcy Court held that the disclaimers were unenforceable, that Ronald had fraudulently transferred his one-half interest in the Clayton Road property to Michael and Ryan in contravention of Missouri's UFTA, that this transfer was void, and that Ronald would be deemed to hold a one-half interest in the Clayton Road property. Subsequently, Ronald's purported one-half interest in the Clayton Road property was sold at an execution sale. Michael and Ryan now seek to recover the value of that one-half interest in the Clayton Road property.[2]

## II.

We begin our analysis by determining whether the disclaimers are facially valid and enforceable.[3] Under Missouri law, a disclaimer is "an irrevocable and unqualified refusal to accept a transfer." Mo. Rev. Stat. § 474.490.1(2) (1994).[4] To be valid, a

---

[2]We agree with the BAP that this appeal is not moot. Even if the execution sale cannot be undone and even if the Clayton Road property cannot be specifically awarded to Michael and Ryan at this time, they still may receive money damages for their loss.

[3]In Part III, infra, we discuss whether an enforceable disclaimer is a complete defense to fraudulent transfer under Missouri law.

[4]In 1997, this statute was repealed and replaced by Mo. Rev. Stat. §§ 469.010-469.120 (Supp. 1999). Nevertheless, because the events here took place prior to 1997, we shall apply § 474.490. See Mo. Rev. Stat. § 469.120 ("This chapter shall be effective with respect to any disclaimer made after August 13, 1982, except that rights which have vested pursuant to any such disclaimer shall not be disturbed by the

disclaimer must: (1) be in writing; (2) identify the transfer being disclaimed; (3) be signed by the disclaimant; and (4) "[n]o later than nine months after the effective date of the transfer, be received by the transferor, or the transferor's legal representative." Mo. Rev. Stat. § 474.490.3. The Bankruptcy Court found that both disclaimers satisfy requirements one through three, and we see no reason to disturb this conclusion.

As to the fourth requirement, the Bankruptcy Court suggested that it may not have been met because the disclaimers were not delivered to Ronald's brother Robert within nine months of Edna's death, the effective date of the transfer. We do not see any requirement, however, that Robert receive copies of the disclaimers. Instead, we agree with the BAP that item four is satisfied because "Ronald was the personal representative of his mother's estate. He therefore was the legal representative of the transferor of the Clayton Road property and in that capacity he received both disclaimers at the moments of their execution." Blackwell v. Lurie (In re Popkin & Stern), 234 B.R. 724, 728-29 (B.A.P. 8th Cir. 1999).[5] Accordingly, we hold that both disclaimers are prima facie valid under Mo. Rev. Stat. § 474.490.

This conclusion, however, does not end our inquiry. Even if a disclaimer is facially valid, "[a] disclaimer may not be made under this section with respect to any

_____

provisions of this chapter.").

[5]Even if Ronald were deemed incapable of wearing two hats and simultaneously delivering the disclaimers (qua beneficiary) and accepting them (qua representative of Edna's estate), there is yet another delivery that occurred within the nine-month statutory window: Ronald presented the disclaimers to William Drennan, an attorney for Edna's estate, on or about September 24, 1992, within the statutory period.

transfer,[6] or part thereof, which the disclaimant has accepted."[7]  Mo. Rev. Stat. § 474.490.5.  Questions surrounding the meaning of this provision, and whether any of Ronald's actions constitute a sufficient acceptance to render his disclaimers unenforceable, have been at the heart of this litigation.

The Bankruptcy Court concluded that "[b]oth documents entitled 'Disclaimer' are a sham. . . . drafted and executed by [Ronald] in an attempt to defraud his creditors." Blackwell v. Lurie (In re Popkin & Stern), No. 92-42218-293, at 21 (Bankr. E.D. Mo. Aug. 18, 1998).  The basis of this conclusion, however, is not that the disclaimers themselves were improperly executed,[8] but that they were unenforceable because Ronald had accepted "stocks, bonds, jewelry, furniture, and other personal property" in contravention of them.  Id.  We cannot agree with the BAP's characterization that "[t]he record unequivocally demonstrates that Ronald, in spite of his purported and otherwise valid disclaimers to the contrary, in fact accepted numerous transfers from his mother's estate and from the Lurie Family trust, thereby rendering both disclaimers void."  Blackwell, 234 B.R. at 729 (emphasis added).

---

[6]"Transfer" is defined as "the transfer, conveyance or conferment of any property, interest or power from a person other than the disclaimant by operation of law or any testamentary or non-testamentary instrument."  § 474.490.1(6).

[7]"For the purposes of this subsection, a person accepts a transfer if such person voluntarily transfers or encumbers, or contracts to transfer or encumber, all or a part thereof, or executes a written waiver of the right to disclaim, or receives benefits from the transfer, or otherwise indicates acceptance of the transfer . . . ."  § 474.490.5.

[8]As stated above, the Bankruptcy Court did question whether the fourth element of a valid disclaimer was met, but we have held that as a matter of law it was satisfied. The Bankruptcy Court also observed that Ronald "did not offer any explanation as to why he executed two (2) documents entitled 'Disclaimer,'" Blackwell, No. 92-42218-293, at 20, but we see no requirement that he do so.

Even if we were inclined to agree that the General Disclaimer—which broadly disclaims "any interest" in the Lurie Family Trust and Edna's estate—is unenforceable because Ronald accepted certain property disclaimed under it,[9] we are still left with the second, narrower Real Property Disclaimer—a freestanding document—which only purports to disclaim "the real property owned by the Estate of Edna Lurie." There is no dispute that the only property covered by the Real Property Disclaimer is the property at issue here, i.e., the Clayton Road property. There also is no dispute that Ronald never took title to or possession of the Clayton Road property. See Blackwell, No. 92-42218-293, at 28 ("The only property not distributed to [Ronald] was the real property . . . ."). Accordingly, we are persuaded not only that the Real Property Disclaimer is prima facie valid, but also that it was not rendered void by Ronald's acceptance of property covered by it, because in fact he did not accept any such property.

We recognize that the Bankruptcy Court concluded that the Real Property Disclaimer "is not the controlling document," because, on several occasions when referencing his disclaimer, Ronald referred to disclaiming all of his interests under his mother's will, and not to disclaiming only his real property interests.[10] Id. at 20. We do not agree, however, that Ronald's reference to the greater indicates omission of the

[9]There is a lively debate between the parties about whether acceptance of any part of the property covered by a disclaimer renders the entire disclaimer invalid as to all other property covered by it but not accepted. If there were only the General Disclaimer, we might need to reach this question, but we look instead to the Real Property Disclaimer and hence do not reach this question. Even if a partial acceptance of personal property covered by the General Disclaimer would render void the entire General Disclaimer, it would not impact the Real Property Disclaimer, an entirely separate and free-standing instrument.

[10]The Bankruptcy Court also noted that Ronald altered a financial statement in response to a discovery request, Blackwell, No. 92-42218-293, at 21, but cited no evidence that either disclaimer at issue here was altered.

lesser. More importantly, none of the facts cited by the Bankruptcy Court in support of this proposition involve Ronald's acceptance of the Clayton Road property within the meaning of § 474.490.5. The same is true of the evidence relied upon by the BAP for its holding voiding the Real Property Disclaimer. The inescapable fact is that Ronald never accepted any of the property covered by the Real Property Disclaimer, and thus there is no proper basis for voiding that disclaimer.

III.

Having concluded that at least the Real Property Disclaimer is facially valid and enforceable, we turn to determining whether it offers a complete defense to fraudulent transfer under Missouri's UFTA. The BAP noted that "while such a finding was unnecessary in light of the bankruptcy court's decision, the facts would easily support a finding that the disclaimers, even if valid under Missouri law, would themselves be fraudulent transfers." Blackwell, 234 B.R. at 731 n.7. We disagree.

We look to Missouri law to define the scope and meaning of the disclaimer.[11] Under Missouri law, a disclaimer has "the same effect with respect to the disclaimed transfer as though the disclaimant died immediately prior to the effective date of the transfer." Mo. Rev. Stat. § 474.490.4. When a disclaimer is made, then, by act of law it relates back to the granting of the gift and treats the disclaimant as if he predeceased the donor. Accordingly, anything that devolves as a result of the disclaimer devolves as a matter of law from the donor to the beneficiary, not by a transfer from the

---

[11]Section 544(b) of the Bankruptcy Code gives the bankruptcy trustee whatever avoiding powers an unsecured creditor with an allowable claim might have under applicable state or federal law. See Michael L. Cook et al., Fraudulent Transfers, 804 PLI/Comm 473, 486 (Apr. 2000). The bankruptcy trustee brought this action not under the federal bankruptcy fraudulent transfer provision, see 11 U.S.C. § 548 (1994), but under Missouri's UFTA. Accordingly, we face a pure question of Missouri law.

disclaimant to the beneficiary. <u>Accord</u> <u>Simpson v. Penner (In re Simpson)</u>, 36 F.3d 450, 452 (5th Cir. 1994) (holding, under analogous Texas law, that "under the relation back doctrine, a beneficiary never possessed renounced property"); <u>Jones v. Atchison (In re Atchison)</u>, 925 F.2d 209, 211 (7th Cir.) (same principle under analogous Illinois law; disclaimant "had nothing to transfer"), <u>cert. denied</u>, 502 U.S. 860 (1991); <u>Essen v. Gilmore</u>, 607 N.W.2d 829, 834 (Neb. 2000) ("Because a beneficiary who has renounced his or her interest in property does not have and, pursuant to the relation-back doctrine, has not acquired rights in the asset renounced, he or she cannot 'transfer' the property within the meaning of the UFTA.").

Moreover, Missouri law is quite clear about the impact of a disclaimer on the claims of the disclaimant's creditors, stating that "[a] disclaimer under this section relates back for all purposes to the effective date of the transfer and shall not be subject to the claims of any creditor of the disclaimant." Mo. Rev. Stat. § 474.490.4; <u>cf.</u> <u>Jones</u>, 925 F.2d at 211 ("To argue, as the trustee does, that at the moment of the disclaimer there had to be some property interest which the beneficiary disclaimed ignores the express language of the Illinois disclaimer statute which says for all purposes there was not."); <u>Essen</u>, 607 N.W.2d at 835 ("[I]t is the majority view that a renunciation under the applicable state probate code is not treated as a fraudulent transfer of assets under the UFTA, and creditors of the person making a renunciation cannot claim any rights to the renounced property in the absence of an express statutory provision to the

contrary.").[12] We have not been referred to any express provision of Missouri law "to the contrary."

Here, the effective date of the transfer is the date of Edna's death, December 26, 1991. As outlined above, under the terms of Edna's will, if Ronald predeceased Edna, Ronald's sons Michael and Ryan would be entitled to Ronald's share of Edna's estate. As a result of the Real Property Disclaimer, the Clayton Road property passed directly from Edna to Michael and Ryan by operation of law as if Ronald had predeceased Edna. That Ronald, in his capacity as administrator of Edna's estate, executed the deed of distribution transferring the property interest from Edna's estate to Michael and Ryan is of no moment. As a matter of law, the transfer was made from Edna's estate directly to Michael and Ryan. Ronald never accepted the property and it was never his, in his personal capacity, to transfer. Accordingly, under Missouri law, Ronald's disclaimed interest in the Clayton Road property is not subject to the claims of any of his creditors.

---

[12]Although not discussed by the parties, we note that our decision in Drye Family 1995 Trust v. United States, 152 F.3d 892 (8th Cir.1998) (holding that state law consequences of disclaimer and relation-back doctrine are of no concern to operation of federal tax law), aff'd, 120 S. Ct. 474 (1999), is inapposite because the fraud statute at issue here is Missouri's UFTA, not a federal law. Cf. In re Kloubec, 247 B.R. 246, 256 (Bankr. N.D. Iowa 2000) (applying Drye by analogy to federal bankruptcy fraud provision (11 U.S.C. § 1208(d)) and concluding "artificially-created state [relation-back] doctrine cannot modify a substantive Federal statute"). We do not face the question of whether Drye carries over to the federal bankruptcy fraud context and save that issue for another day. Compare Simpson, 36 F.3d at 453 (Chapter 7 debtor's disclaimer of interest in testamentary disposition of property, executed one day before filing of petition, held not to be fraudulent transfer under 11 U.S.C. § 548(a); "under Texas law a disclaimer is not a fraudulent transfer under 11 U.S.C. § 548"), and Jones, 925 F.2d at 211 (same principle), with Lowe v. Brajkovic (In re Brajkovic), 151 B.R. 402, 405-11 (Bankr. W.D. Tex. 1993) (§ 474.490's relation-back doctrine is legal fiction of state law that should not be imported in contravention of federal bankruptcy fraud provision § 548).

IV.

In sum, we reverse the decision of the Bankruptcy Court, and also reverse the BAP's affirmance of the Bankruptcy Court's decision, that both disclaimers are void and unenforceable. We hold that, as a matter of law, at least the Real Property Disclaimer is valid and enforceable.[13] Accordingly, Ronald's one-half interest in the Clayton Road property passed by operation of law directly from Edna to her grandsons, Michael and Ryan. Ronald never accepted his interest in the Clayton Road property and therefore could not have transferred it at all—let alone fraudulently—to Michael and Ryan. We remand for further proceedings consistent with this opinion to determine the amount of damages owed to Michael and Ryan for the loss of their combined one-half interest in the Clayton Road property.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[13]We do not reach the question of whether the General Disclaimer is enforceable as to the Clayton Road property.