# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 00-6019NE

———

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Michael Aaron Bowman | * | |
| and Debra Jo Bowman | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Michael Aaron Bowman | * | Appeal from the United |
| and Debra Jo Bowman | * | States Bankruptcy Court |
| | * | for the District of Nebraska |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Jack Bond | * | |
| | * | |
| Appellee. | * | |

———

Submitted: July 13, 2000
Filed: October 2, 2000

———

Before KOGER, Chief Judge, HILL, and DREHER, Bankruptcy Judges.

———

DREHER, Bankruptcy Judge

Appellants Michael Aaron Bowman and Debra Jo Bowman ("Debtors") appeal the December 1, 1999 order of the bankruptcy court[1] granting Appellee Jack Bond ("Appellee") relief from the automatic

---

[1]The Honorable Timothy Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

stay to foreclose on certain real property in Dundy County, Nebraska owned by the Debtors ("Dundy property") and the February 17, 2000 order of the bankruptcy court denying Debtors' motion for reconsideration. We affirm.

## FACTS

The Debtors in this case are Michael and Debra Bowman. Mr. Bowman is employed full-time by a radio station equipment company in Ogallala, Nebraska, approximately 60 miles from the Dundy property which is the subject of this appeal. Ms. Bowman is employed full-time as a clerk at a lumber company. The Debtors' combined yearly income is approximately $60,000.

On April 23, 1999, the Debtors filed a chapter 11 bankruptcy petition. The filing of that petition stayed a foreclosure action on the Debtors' 1,400 acre Dundy property. Metropolitan Life Insurance Company of Kansas City originally held the first mortgage on the Dundy property. Prior to the Debtors' bankruptcy filing, however, Metropolitan had assigned its mortgage interest to the Appellee. When the bankruptcy petition was filed, the Dundy property was subject to numerous liens and mortgages totaling over $4 million, including Appellee's claim for around $600,000.

Upon filing for bankruptcy, the Debtors indicated that they intended to reorganize[2] their farming operations. So, throughout the summer of 1999, the Debtors requested approval from the bankruptcy court to undertake certain farming operations. On one occasion, the Debtors proposed to lease farmlands from a large produce company to plant pumpkins. Several creditors objected to the Debtors' plans, and the bankruptcy court denied the Debtors' motion on grounds that it was too late in the summer to plant pumpkins. On another occasion, the Debtors proposed to plant organic crops and lease 300 acres of farmland in Hays County, Nebraska. Based on objections from creditors, the bankruptcy court disapproved that proposal as well.

---

[2]Throughout the bankruptcy proceedings, Debtors asserted that they were "farmers" as the term is defined in 11 U.S.C. § 102(20) and indicated that they planned to continue and reorganize their farming operations. However, while the Debtors certainly owned farmland, such as the 1,400 acre Dundy property, there is no evidence that they were actively farming that property or any other property at the time they filed for bankruptcy.

On August 2, 1999, the Debtors filed a plan of reorganization and a disclosure statement. Under that plan, the Debtors indicated that they would not only continue their farming operations but also that they would undertake organic farming. Specifically, the plan provided that the Debtors would retain their interest in the Dundy property and make substantial annual payments. Profits from the farming operations would be used to pay the secured creditors' claims in installments over twenty-five years. Unsecured creditors would receive a pro-rata share of any remaining profits over a seven-year period. In addition, the plan provided that the Debtors would maintain their full-time jobs as a sales associate and a clerk, using this employment income to cover their living expenses. The appendix to the plan indicated that the Debtors believed the Dundy property was worth $700,000. Several creditors objected to this low valuation. One lien holder hired an appraiser to value the Dundy property.

Appellee claimed that a successful reorganization was not possible given the Debtors' proposed plan. On September 17, 1999, Appellee sought relief from the automatic stay to initiate foreclosure proceedings, asserting both that the Debtors lacked equity in the Dundy property and that the Dundy property was not necessary for an effective reorganization. Alternatively, the Appellee argued that his interest in the Dundy property was not adequately protected.

During the next several months, the Debtors sought to continue the hearing on Appellee's motion for relief from the automatic stay. On October 12, 1999, the bankruptcy court held a preliminary hearing. The Debtors subsequently offered Appellee several different payment plans to adequately protect his secured interest and requested that the bankruptcy court delay or cancel the upcoming evidentiary hearing. The bankruptcy court denied the Debtors' requests.

On November 3, 1999, the bankruptcy court held an evidentiary hearing on Appellee's motion for relief from the automatic stay. At the hearing, the Debtors' counsel acknowledged that the Debtors had no equity in the Dundy property and that the plan of reorganization proposed in August was not confirmable. The Debtors accordingly introduced a new plan of reorganization–a liquidation plan under which the Debtors would liquidate several related entities, such as Bowman Storage LLC, and form one surviving entity, the Bowman Family Partnership, Ltd., to engage in organic dairy farming and pork production.

Mr. Bowman testified at the evidentiary hearing that neither he nor his wife had any experience in the dairy business or organic farming. Mr. Bowman also indicated that they did not own any farm

equipment or cows. Moreover, the Debtors acknowledged that they had no operating capital to get their farming operations up and running. Under the plan, the Dundy property would sit idle for the first two years because its five-year water allocation had already been used. During those two years, however, the Debtors could, according to Mr. Bowman, secure organic certification for their farming operations, which required that no pesticides or other chemicals be applied to the farmland for two growing seasons, and continue to collect Freedom to Farm Act payments from the USDA. Mr. Bowman also pointed out that he and his relatives had been actively engaged in developing a pork production project since 1994. Finally, Mr. Bowman acknowledged that he was not sure of the plan's treatment of certain creditors and liens, specifically which liens or creditors would receive payments and in what amounts.

On December 1, 1999, the bankruptcy court entered an order granting Appellee relief from the automatic stay, enabling Appellee to initiate foreclosure proceedings against the Dundy property under Nebraska state law. The Debtors subsequently filed a motion asking the bankruptcy court to reconsider its previous order in light of new evidence about the Dundy property's value. Previously, the Debtors believed that the Dundy property was worth $700,000, but they now had a written appraisal valuing it at $1.4 million. On January 31, 2000, the bankruptcy court held a telephonic hearing on the Debtors' motion to reconsider and, on February 17, 2000, denied that motion. The Debtors appealed from the order granting Appellee relief from the automatic stay and the order denying the motion to reconsider.

During oral argument in this case, the parties advised the court that the foreclosure sale authorized by the bankruptcy court's order granting relief from the automatic stay would likely occur in the near future. As of the date of this opinion, the foreclosure sale has not yet taken place, but the Dundy property remains under imminent threat of foreclosure. In addition, it is now almost eighteen months and two full growing seasons into the Debtors' farm reorganization and the Debtors still have not proposed a plan of reorganization acceptable to the creditors.

## ISSUES

On appeal, the Debtors raise two main issues. The first issue is whether the bankruptcy court abused its discretion in granting Appellee relief from the automatic stay. The bankruptcy court granted Appellee relief from the automatic stay under sections 362(d)(1) and 362(d)(2) after finding that the Appellee's interest in the Dundy property was not adequately protected; that the Debtors did not have any equity in the Dundy property; and that the Dundy property was not necessary to an effective reorganization.

4

As discussed more fully below, because we have decided that the bankruptcy court correctly granted Appellee relief from the automatic stay under section 362(d)(2), we do not need to address the alternative ground for relief under section 362(d)(1). The second issue on appeal is whether the bankruptcy court abused its discretion in denying Debtors' motion for reconsideration.

## STANDARD OF REVIEW

A decision to grant or deny a motion for relief from the automatic stay is within the discretion of the bankruptcy court and will be reviewed only for an abuse of discretion. Blan v. Nachogdoches County Hospital (In re Blan), 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999); Kirwan v. Vanderwerf (In re Kirwan), 164 F.3d 1175, 1178 (8th Cir. 1999). An abuse of discretion will only be found if the lower court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions. Barger v. Hayes County Non-Stock Co-op. (In re Barger), 219 B.R. 238, 243 (B.A.P. 8th Cir. 1998) (citing Mathenia v. Delo, 99 F.3d 1476, 1480 (8th Cir.1996)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court, on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). The bankruptcy court's determinations that the Debtors did not have any equity in the property and that such property was not necessary to an effective reorganization under Bankruptcy Code § 362(d)(2) are factual in nature. As such, we review those findings under the clearly erroneous standard.

The bankruptcy court's order denying the "motion to reconsider" is reviewed under the same standard on appeal. Action by the bankruptcy court on a Rule 60(b) motion may be reversed only for abuse of discretion. Kirwan v. Vanderwerf (In re Kirwan), 164 F.3d 1175, 1177 (8th Cir. 1999).

## DISCUSSION

The Bankruptcy Code provides that a creditor may seek relief from the automatic stay in certain limited circumstances. Specifically, under section 362(d), the bankruptcy court may grant a party relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest" or, alternatively, "if the debtor does not have an equity in such property, and such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(1) & (d)(2) (1994). The

5

language of section 362(d) makes clear that a creditor may obtain relief from the automatic stay on either ground.[3]

Under section 362(d)(2), the creditor seeking relief from the automatic stay initially bears the burden of showing that the debtor has no equity in the secured property. See Anderson v. Farm Credit Bank of St. Paul (In re Anderson), 913 F.2d 530, 532 (8th Cir. 1990); In re Fenske, 96 B.R. 244, 247 (Bankr. D.N.D. 1988) (citing United Sav. Ass'n v. Timbers of Inwood Forest Assocs., 484 U.S. 365 (1988)); see also 11 U.S.C. § 362(g)(1) (1994) ("In any hearing under subsection (d) ... of this section concerning relief from the stay ... the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and ... the party opposing such relief has the burden of proof on all other issues."). Once the creditor sustains that burden, the burden of proof then shifts to the debtor to show that the property is necessary to an effective reorganization. See Anderson, 913 F.2d at 532.

The test for determining equity under the first part of § 362(d)(2) involves a comparison between the total liens against the property and the property's current value. Nantucket Investors II v. California Federal Bank (In re Indian Palms Assocs., Ltd.), 61 F.3d 197, 206 (3d Cir. 1995). All encumbrances are totaled to determine equity whether or not all lienholders have requested relief from the stay. Id. at 207. In this case, the Debtors conceded on several occasions that they do not have equity in the Dundy property. The Debtors lack equity regardless of whether the $700,000 value or the $1,411,000 value is used because the lien total on the Dundy property exceeds $4 million.

The Debtors having conceded that they lack equity in the Dundy property, the only remaining issue is whether the bankruptcy court erred in finding that the Debtors failed to sustain their burden of proof on the second part of section 362(d)(2). The Supreme Court held that the debtor must show there is a "reasonable possibility of a successful reorganization within a reasonable time" to satisfy section 362(d)(2)'s "necessary for an effective reorganization" component. Timbers of Inwood Forest, 484 U.S. at 376. More specifically, a debtor must show that its proposed plan of reorganization is feasible and therefore, likely confirmable. See Fenske, 96 B.R. at 247, 248. According to the Eighth Circuit, the "feasibility test contemplates 'the probability of actual performance of provisions of the plan. ... The test is whether things which are to be done after confirmation can be done as a practical matter under the facts.'" In re Clarkson,

---

[3]Section 362(d) also provides a third ground for relief from the automatic stay in the case of single asset real estate. However, this third ground for relief does not apply in this case.

767 F.2d 417, 420 (8th Cir. 1985) (quoting In re Bergman, 585 F.2d 1171, 1179 (2d Cir. 1978)).  In other words, "'[s]incerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are visionary promises."  Id. ("The Clarksons' failure to file operation reports or audit reports makes informed expectations about the plan's success virtually impossible. ... Although we sympathize with the Clarksons, we find that the feasibility test is firmly rooted in predictions based on objective fact.").

Applying the Timbers of Inwood Forest standard to this case, the Debtors failed to establish that there was any prospect for a successful reorganization of their farming operations at any time.  The Debtors repeatedly presented to the bankruptcy court plans for reorganization that were not feasible and not confirmable.  The Debtors' first argument is that they did not have sufficient time between the filing of their bankruptcy petition in April of 1999 and the granting of relief from the stay seven months later to establish their prospects for a successful reorganization.  However, as footnote one in the Timbers of Inwood Forest case makes clear, seven months provided the Debtors ample time.  See Timbers of Inwood Forest, 484 U.S. at 376 n.1 (citing inter alia In re Findley, 76 B.R. 547, 555 (Bankr. N.D. Miss. 1987) (6½ months); In re Efcor, Inc., 74 B.R. 837, 843-45 (Bankr. M.D. Pa. 1987) (4½ months); In re Development, Inc., 36 B.R. 998, 1005-06 (Bankr. Haw. 1984) (6 months); In re Boca Dev. Assocs., Ltd., 21 B.R. 624, 630 (Bankr. S.D.N.Y. 1982) (7½ months)).  Indeed, this seven month period spanned a full growing season through which the Debtors made little, if any, progress towards reorganizing.

Next, the Debtors point to the plan of reorganization and disclosure statement filed in August of 1999 as evidencing their prospects for a successful reorganization.  Specifically, the plan proposed that the Debtors would pursue organic farming and the production of organic milk.  The plan drew many objections from creditors who legitimately questioned the Debtors' ability to undertake organic farming.  The Debtors owned no farm equipment, produced no farming track record or historical data, and perhaps most importantly, admitted they had no organic farming experience.  In short, the plan which failed to provide full payment for senior classes of creditors, yet allowed the Debtors to retain their property interest, was simply not feasible.

Third, acknowledging that the plan proposed in August was not confirmable, the Debtors came forward at the November hearing with a new liquidation proposal for a large-scale organic farming operation run by the Debtors' relatives.  However, that proposal, like the Debtors' previous proposals, was plagued by numerous inconsistencies and made little sense.  For example, the Debtors did not have any organic farming experience; the Debtors did not live on the farming property; the Debtors had not made

any attempts to secure financing; the Debtors owned no farm equipment and had not made any arrangements for building the barns and other facilities required for the farming operation; and the Debtors' proposal did not explain how they would work with their judgment creditors or even address specifics about payments to secured creditors.

The essence of the Debtors' arguments seems to be that their case is extremely complicated and that the bankruptcy court just did not give them enough time to put together a reorganization plan that would satisfactorily address all of their debts and related bankruptcy cases. In addition to this chapter 11 case, the Debtors filed three other related chapter 11 cases: John and Debbie V. Bowman; Bowman Storage LLC; and Bowman Family Partnership, Ltd. The Debtors claim that they were trying to deal with all of their debts in all of these cases on a consolidated basis. However, nothing in the record suggests that this consolidation could have occurred or would have adequately addressed Debtors' reorganization woes. Moreover, Debtors' motion on appeal stems from the original chapter 11 case. As such, we, as an appellate court, consider only the evidence presented to the bankruptcy court and in the record regarding the motion for relief from the stay and the Debtors' subsequent motion for reconsideration.

Overall, the Debtors offered much evidence to the bankruptcy court about what they hoped to accomplish by way of an organic farming operation. But they offered no concrete evidence establishing a reasonable possibility of a successful reorganization within a reasonable time. The record is replete with evidence to support findings that a reorganization was not in progress and that there was no prospect for a successful reorganization in the foreseeable future. We find that the bankruptcy court's conclusion that the Debtors did not have a reasonable possibility of a successful reorganization within a reasonable period of time was not clearly erroneous. Accordingly, we affirm the bankruptcy court's decision to grant Appellee relief from the automatic stay under section 362(d)(2).

We now turn to the second issue on appeal. The Debtors argue that the bankruptcy court erred in denying their motion for reconsideration. Under Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024, the bankruptcy court may relieve a party from a final judgment or order on the basis of newly-discovered evidence. Fed. R. Civ. P. 60(b)(2). In order to obtain relief under subsection (b)(2), the moving party must show that: (1) the evidence was discovered after trial; (2) the party exercised due diligence to discover the evidence before the end of the trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial considering the evidence would probably produce a different result. Kieffer v. Riske (In re Kieffer-Mickes,

8

Inc.), 226 B.R. 204, 210 (B.A.P. 8th Cir. 1998). The moving party bears a heavy burden because Rule 60 provides extraordinary relief and is, therefore, generally viewed with disfavor. Id.

The Debtors claim that the $1.4 million written appraisal of the Dundy property and their liquidation plan constituted new evidence sufficient to obtain relief from the bankruptcy court's November order. This evidence, however, was not new under Rule 60(b)(2). While the $1.4 million appraisal was not yet in writing, the parties and the bankruptcy court knew that an appraiser might value the Dundy property in that amount when the November hearing took place. Moreover, the Debtors had several months prior to the November hearing to secure a written report reflecting the $1.4 million appraisal. This failure to obtain a written report is yet another instance of the Debtors dragging their feet in this case. As for the liquidation plan, the notion of liquidating the Debtors' assets was admittedly new, but Rule 60(b)(2) is not intended to give a debtor relief from a bankruptcy court's previous order every time it comes to court with a new plan. The Debtors had ample opportunity to present a feasible plan of reorganization to the bankruptcy court before and at the November evidentiary hearing. Therefore, we find that the bankruptcy court did not abuse its discretion in denying the Debtors' motion for reconsideration.

ACCORDINGLY, the decision of the bankruptcy court is AFFIRMED.


A true copy.

Attest:


CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT