**In re Jason and Alice CURTIS, Debtors.**

**No. 5:06–bk–11824M.**

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

March 8, 2007.

---

Walter Whit Barton, Ball, Barton & Hoffman, Monticello, AR, for Union Bank & Trust Company.

Hilary B. Bonial, Brice Legal Group, P.C., Dallas, TX, for Washington Mutual.

Brooks A. Gill, Gill Law Firm, Dumas, AR, for Merchants & Farmers Bank.

Kyle Havner, Baim Law Firm, Pine Bluff, AR, for Alice Curtis and Jason Curtis.

Louis Whitaker Light, Nixon & Light, Little Rock, AR, for CNH Capital America LLC.

Lance R. Miller, Mitchell Law Firm, Little Rock, AR, for Deere & Company.

Rosalind M Mouser, Ramsay Law Firm, Pine Bluff, AR, for Simmons First Bank South Arkansas.

Erich M. Ramsey, Ascension Capital Group, L.P., Arlington, TX, for Compass Bank (Secured) Department.

J. Maurice Rogers, Hilburn Law Firm, N. Little Rock, AR, for Scott Financial Services and Leasing, L.L.C.

Roger D. Rowe, Lax, Vaughan, Fortson, Mckenzie & Rowe, Little Rock, AR, for Helena Chemical Company.

Thomas S. Streetman, Streetman, Meeks & McMillan, PLLC, Crossett, AR, for Renee S. Williams.

### AMENDED ORDER

JAMES G. MIXON, Bankruptcy Judge.

Before the Court are two motions for relief from the automatic stay, one filed by Merchant & Farmers Bank of Dumas ("MFB") and one filed by Union Bank & Trust Company ("UB"). Jason and Alice Curtis ("Debtors") first filed for relief under the provisions of Chapter 12 of the United States Bankruptcy Code. On June 30, 2006, the case was converted to Chapter 7. Renee Williams is the duly appointed Trustee in the Chapter 7, and she filed an

objection to both motions for relief from the stay. Hearings on the two motions were consolidated for a trial, which was conducted on September 29, 2006, in Little Rock, Arkansas.

Both creditors allege in their respective motions that they hold valid security interests in certain personal property of the estate and they should be granted relief from the stay to foreclose their security interests in state court. The trustee objects to granting relief from the automatic stay because she alleges the banks do not hold a perfected security interest in the collateral.

The proceedings before the Court are core proceedings in accord with 28 U.S.C. § 157(b)(2)(A) and the Court may enter a final judgment in this case.

## MFB'S CLAIM

MFB claims to have a perfected security interest in certain farm equipment listed on the Debtors' schedule. MFB financed the purchase of a tractor and two scrapers. Trustee's Exhibit 1 is a promissory note dated July 15, 2004, in the principal sum of $95,025.00 and was signed "J & A Farms" by Jason M. Curtis, Partner and Alice B. Curtis, Partner. Trustee's Exhibit 2 is a UCC Security Agreement dated July 15, 2004, which lists J & A Farms, 311 South John Street, Dumas, Arkansas 71839 as the Debtor and Merchants & Farmers Bank, P.O. Box 187, Dumas, Arkansas 71839 as the secured party. The security agreement granted a security interest to MFB in all equipment owned by the debtor and in property described therein to secure repayment of the promissory note described above. The property was described as follows:

1. John Deere Tractor Model RW9400, Serial No. RW9400P030078

2. One Reynolds 17C Scraper, Serial No. 27855

3. One Reynolds 17C Scraper, Serial No. 28020.

Trustee's Exhibit 3 is a financing statement filed by MFB with the Arkansas Secretary of State on July 22, 2004, which listed the farm equipment described above. Trustee's Exhibit 4 is a financing statement filed by MFB with the Arkansas Secretary of State on May 20, 2005, securing the two scrapers mentioned previously. Trustee's Exhibit 5 is a financing statement filed by MFB with the Clerk and Recorder of Desha County, Arkansas, on July 21, 2004, which lists the three pieces of farm equipment described above. The Debtor was listed as J & A Farms, 311 South John, Dumas, Arkansas.

The Trustee's Exhibit 6 is a promissory note dated August 3, 2004, in the principal sum of $65,725.00. The note was signed, "J & A Farms by Jason M. Curtis, Partner and Alice B. Curtis, Partner."[1] Trustee's Exhibit 7 is a UCC Security Agreement dated August 3, 2004, which lists J & A Farms as Debtors and MFB as the secured party. The security agreement granted a security interest to MFB in personal property described therein. The property is described as follows:

1. Competitor 128 AIRSTREAM Grain Dryer, Model 12GC134LCGW

2. One 10 inch × 81 feet auger W/20HP Motor, SN 905415

3. One 10 inch × 81 feet auger W/20HP Motor, SN 908853

---

1. The August 2, 2004 note and security agreement are also signed by Jonathan Curtis as a debtor because of his ownership interests in the equipment; however, this is not relevant for purposes of deciding whether relief from the stay is appropriate and any future reference to Jonathan Curtis will be omitted.

4. One 10 inch × 81 feet auger W/20HP Motor, SN 1013420

5. One plastic hopper

6. One bin sweep for 36–foot bin

7. Personal Guaranties of Jason M. Curtis and Alice B. Curtis.

The security agreement is signed, "J & A Farms by Jason M. Curtis, Partner and Alice B. Curtis, Partner." Trustee's Exhibit 9 is a financing statement filed by MFB with the Arkansas Secretary of State on August 16, 2004, which listed the farm equipment stated above and listed the Debtor as "J & A Farms, 311 South John Street, Dumas, Arkansas 71839."

MFB witness, Jason Wilkerson, testified that the unpaid balance of the July 15, 2004, loan as of June 12, 2006, is $56,947.08. The unpaid balance of the August 3, 2004, loan as of June 12, 2006, is $57,909.19.

## UB'S CLAIM

UB claims to have a perfected security interest in farm equipment, crops, and government payments. UB Exhibit 6 is a promissory note dated January 24, 2005, in favor of UB in the principal sum of $497,000.00. The note was signed by "J & A Farms by Jason Curtis, Partner and Alice Curtis, Partner." UB Exhibit 7 is a security agreement dated January 24, 2005, which lists J & A Farms as the debtor and UB as the secured party. The security agreement granted a security interest in the following personal property:

All crops now growing or to be grown including but not limited to rice, soybeans, wheat, corn, milo. Record Owners: Tom Pugh in S24, 13 & 25, T9S, R2W, S18, 19, T9S, R1W all in Desha County; A & K Farms in S34, & 35, T9S, R5W in Lincoln County all farm machinery & equipment now owned or hereafter acquired. P/G of Jason M &

Alice B Curtis; 90% FSA Guarantee; all FSA payments.

The security agreement also granted a security interest in an itemized list of all of J & A Farms' equipment.

UB Exhibit 8 is a financing statement filed by UB with the Clerk and Recorder of Desha County, Arkansas, on February 2, 2005, in which J & A Farms is listed as the debtor and described as a partnership. UB Exhibit 9 is a financing statement filed by UB with the Circuit Clerk of Lincoln County, Arkansas, on February 2, 2005, in which J & A Farms is listed as a debtor and described as a partnership. The collateral described in both financing statements is the same as described in the January 24, 2005 security agreement with UB. UB also filed financing statements listing J & A Farms as the debtor in Chicot County, Arkansas, on May 9, 2003 and Drew County, Arkansas also on May 9, 2003. (UB Ex. 14 & 15.) UB Exhibit 13 shows a financing statement filed on May 9, 2003, Bob Rork, Circuit Clerk, but does not indicate what county is involved.

John Owen, witness for UB, testified that the balance owed to UB is $391,996.78. UB did not offer any evidence of the existence of or value of any crops or farm subsidy payments in which it claimed a security interest. UB Exhibit 10 is a record of the Arkansas Secretary of State reflecting the filing of a financing statement by UB on January 27, 2005, in which J & A Farms is listed as the debtor and the collateral described therein includes crops and government payments.

The bankruptcy petition shows the Debtors' interest in J & A Farms and values the interest at zero. (Trustee Ex. 2A.) The petition schedules government payment, crop proceeds, and 106,000 bushels of rice valued at a total of $125,000.00, as well as various pieces of farm equipment mentioned previously as the Debtors'

individual property as of the petition date of May 12, 2006. (Trustee Ex. 2A.)

## ARGUMENTS

UB and MFB argue that the evidence establishes grounds for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) because they hold a valid perfected security interest in the Debtors' farm equipment, crops, and/or government payments which far exceed the amount of the creditors' claims; therefore, there is no equity in the property for the Trustee to administer for the benefit of unsecured creditors. The Trustee does not dispute that the amount of the secured claims by both banks exceed the value of the farm equipment, crops, and government payments, but argues that the security interests are not perfected because (1) they were not granted by the Debtors individually and (2) the banks have not established by the evidence the location of the Debtors and, therefore, the banks may have filed in the wrong county.

## DISCUSSION

11 U.S.C. § 362(a) operates as a stay against all entities of, among other things, "any act to create, perfect, or enforce any lien against property of the estate. . . ." 11 U.S.C. § 362(d) provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(g) allocates the burden of proof in any hearing on the motion for relief from the automatic stay. This section provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

Accordingly, the burden of proof under 11 U.S.C. § 362(d) is a shifting one. The creditor seeking relief from the automatic stay initially bears the burden of showing that the debtor has no equity in the property at issue; once that burden is met, the burden shifts to the Trustee. See *Bowman v. Bond (In re Bowman)*, 253 B.R. 233, 238 (8th Cir. BAP 2000)(citing *Anderson v. Farm Credit Bank of St. Paul (In re Anderson)*, 913 F.2d 530, 532 (8th Cir.1990); *In re Fenske*, 96 B.R. 244, 247 (Bankr.D.N.D.1988)); see also 3 Collier on Bankruptcy ¶ 362. 10 at 117–8 (Alan N. Resnick & Henry J. Sommer, et al. eds., 15th ed. rev.2006). Therefore, the banks have the burden of proof to establish a lack of equity and the Trustee has the burden of proof as to all other issues.

In order to determine the amount of equity or lack thereof in the collateral at issue, it is necessary to determine the property interests. Bankruptcy courts determine property interests based on state law; therefore, the court must look to

Arkansas law.[2] *Wetzell v. Equipment Dealers Credit Company (In re Davis)*, 274 B.R. 825, 828 (Bankr.W.D.Ark.2002).

Attachment of a Security Interest

■ A security interest attaches when (1) the debtor has signed a security agreement in favor of the secured party that provides a description of the collateral, (2) value has been given by the secured party to the debtor, and (3) the debtor has rights in the collateral. Ark.Code Ann. § 4–9–203(b)(1–3) (Michie 2003).

■ To assess whether the banks have a valid security interest, it must be determined who had rights in the collateral, the partnership J & A Farms or the Debtors individually. Property becomes partnership property if acquired "(1) in the name of the partnership or (2) in the name of one or more of the partners with an indication in the instrument transferring title or either (i) their capacity as partners or (ii) of the existence of partnership, even if the name of the partnership is not indicated." Ark.Code Ann. § 4–46–204 (Michie 2003). According to Official Comment 3, it is ultimately the intention of the partners that controls whether property belongs to the partnership or to the partners individually, at least as among the partners themselves.

The Debtor, Jason Curtis (Jason), testified that he started farming operations in 2001. Jason and Alice then formed J & A Farms. Jason testified that a partnership agreement was drawn up, although it was not introduced at trial. He stated that he conducted his farming operation as J & A Farms beginning with the crop year 2003.

■ The following evidence supports a finding that the Debtors intended for all of the involved collateral to be owned by J & A Farms, and not Jason and/or Alice individually at the time the security interests were transferred: (1) Jason's testimony that he transferred all farm equipment that he owned to the partnership when formed; (2) Jason's testimony that there was a bill of sale; (3) tax returns for J & A Farms from 2003 listing depreciation on the equipment (MFB Ex. 2); (4) tax returns for both J & A Farms and the Debtors individually from 2004 and 2005 indicating that the equipment, crops, and crop proceeds were that of J & A Farms (UB Ex. 2–5); (5) a balance sheet dated March 2003 indicating that the equipment was owned by J & A Farms (MFB Ex. 1); (6) a balance sheet dated December 2004 indicating that the equipment was owned by J & A Farms (UB Ex. 1); (7) a financial statement from December 1, 2003, indicating that the equipment was owned by J & A Farms (MFB.Ex.3); (8) Jason's testimony that it was J & A Farms that was signed up under FSA through USDA on all row crop business; (9) testimony from vice president of UB, John Owen, that the USDA benefits were for J & A Farms, not Jason, individually; and (10) John Owen's testimony that any checks received from various people in the industry for purchasing 2005 crop were made to J & A Farms and UB jointly.

The only evidence to the contrary is the Debtors' bankruptcy petition, filed long after the dates of the security agreements, which lists the property in question as assets of the individual Debtors. No one asked the Debtors why the property was scheduled as individual property as opposed to partnership property, and the Debtors never explained why they so listed it.

In light of all the evidence, it is clear by a preponderance of the evidence that J &

---

**2.** The events in this case occurred subsequent to the amendment to Arkansas' version of the Uniform Commercial Code which was adopted in 2001.

A Farms was the owner of the collateral and had sufficient rights in all of the collateral for the security interests to attach and become enforceable, as required by Arkansas Code Annotated Section 4–9–203(a)(1)(2), at the time the security interests were granted.

### Perfection of a Security Interest

■ Finding that both MFB and UB have valid security interests in their respective collateral does not end the inquiry. If the creditor's security interest in the collateral is not properly perfected at the time the bankruptcy petition is filed, the Trustee's rights in the collateral are superior to the rights of the creditor. *Wetzell v. Equipment Dealers Credit Company (In re Davis)*, 274 B.R. 825, 828 (Bankr.W.D.Ark.2002).

■ In order to perfect a security interest, the secured party is required to file its financing statement with "the office of the circuit clerk in the county in which the debtor is located in this state if the debtor is engaged in farming operations and the collateral is equipment used in farming operations, or farming products . . . ." Ark. Code Ann. § 4–9–501(a)(2)(Michie 2003). The term "farm products" includes "crops grown, growing or to be grown." Ark. Code Ann. § 4–9–102(34)(a)(Michie 2003). Section 4–9–501(a)(2) is a significant change from the law contained in Arkansas Code Annotated Section 4–9–401.[3] Furthermore, Arkansas' Section 4–9–501(a)(2) is a minority position; Arkansas' legislature chose not to follow the recommended revised Uniform Commercial Code that suggests a central filing system for crops. See Uniform Commercial Code Reporting Service, State UCC Variations, AR-page 51 (2006); Susan A. Schneider, *Notes on Agricultural Landlord's Liens Under Revised Article 9 of the Uniform Commercial Code*, 2002 Ark. L. Notes 53, 58 (2002).

■ A debtor's location, if the debtor is an organization, is determined by where the "place of business" is located. A debtor that has only one place of business is located at that place of business; whereas, if the debtor has more than one place of business, the debtor is located at its chief executive office. Ark.Code Ann. § 4–9–307(b)(2)(Michie 2003). Nowhere does the UCC define "place of business." The Eighth Circuit states that what constitutes a place of business involves "a finding based on a non-technical statutory standard closely related to practical human experience." *American Cyanamid v. McCrary's Farm Supply, Inc. (In re McCrary's Farm Supply, Inc.)*, 705 F.2d 330, 332 (8th Cir.1983). According to Official Comment 2, the term "chief executive office" means "the place from which the debtor manages the main part of its business operations or other affairs. This is the place where persons dealing with the debtor would normally look for credit information, and is the appropriate place for filing."

■ Using the Eighth Circuit's analytical framework, this Court finds that J & A

---

3. Arkansas Code Annotated Section 4–9–401, that was repealed in 2001, provided:

(1) The proper place to file in order to perfect a security interest is as follows: (a) When the collateral is equipment used in farming operations, or farm products, or accounts or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the clerk of the circuit court and ex officio recorder in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the clerk of the circuit court and ex officio recorder in the county where the goods are kept, and in addition when the collateral is crops growing or to be grown, in the office of the clerk of the circuit court and ex-officio recorder in the county where the land is located.

Farms had more than one place of business. According to practical human experience, each county in which a debtor grows crops would be a "place of business." John Owen, vice president of UB, testified that all farming activities were conducted in the name of J & A Farms in 2005 and that J & A Farms did not own land but was a farm tenant and farmed in Desha and Lincoln County, Arkansas. Because J & A Farms was growing crops in several different counties, the farm equipment and crops must be perfected in a county which is considered to be J & A Farms' chief executive office.

Every balance sheet, tax return, loan document, security agreement, and financial sheet presented lists Dumas, Arkansas, which is located in Desha County, as the address for J & A Farms.[4] In addition, both partners of J & Farms reside in Dumas, Arkansas. There is no evidence presented that would suggest there is a different location that could be considered J & A Farms' chief executive office. From the evidence presented, J & A Farms' chief executive office is located in Desha County. Both banks filed all financing statements in Desha County. Therefore, all financing statements regarding the farm equipment and crops were filed in the proper county and were properly perfected.

Unlike perfection of crops, in order to perfect a security interest in government payments, a financing statement must be filed with the office of the Secretary of State. See Ark.Code Ann. § 4–9–307(b)(2)(Michie 2003) and *In re Stevens*, 307 B.R. 124, 132 (Bankr.E.D.Ark.2004).

The USDA benefits are government payments and UB filed with the Secretary of State on January 27, 2005. Therefore, UB has a perfected security interest in the USDA benefits.

The Trustee offered no evidence that either of the banks filed their financing statement in the wrong place. Furthermore, the Trustee makes no argument that there was any equity in excess of the banks' claims. According to testimony, the total amount owed both banks by J & A Farms as of the hearing date was $506,853.05. All of the equipment owned by J & A Farms was last appraised at $161,850.00. (MFB Ex. 7.) According to the Debtors' schedules, the government payments, crop proceeds, and bushels of rice were valued at $125,000.00. (Trustee's Ex. 11.) Even if all the collateral in question were surrendered, the debtor would still owe a total of $220,003.05 to the banks.

Therefore, the evidence is clear that there is no equity in either banks' collateral for the Trustee to administer and the banks hold valid and perfected security interest in the collateral described in their respective security agreements. The motion for relief from the automatic stay is granted and the property is abandoned from the estate.

IT IS SO ORDERED.

---

4. The Court takes judicial notice that Dumas, Arkansas, is located in Desha County, Arkansas.