# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 10-6066

_____

In re:                                              *
                                                    *
Crossroads Ford, Inc.,                              *
                                                    *
           Debtor.                                  *
                                                    *
Crossroads Ford, Inc.,                              *
                                                    *   Appeal from the United States
           Debtor - Appellant,                      *   Bankruptcy Court for the District of
                                                    *   Nebraska
                 v.                                 *
                                                    *
Dealer Computer Services, Inc.,                     *
                                                    *
        Creditor - Appellee.                        *

_____

Submitted: May 3, 2011
Filed: June 2, 2011

_____

Before KRESSEL, Chief Judge, FEDERMAN, and VENTERS, Bankruptcy
Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal of the bankruptcy court's order granting Creditor Dealer
Computer Services, Inc. ("DCS") relief from the automatic stay to proceed with

arbitration of its claim against the Debtor's bankruptcy estate. An order granting relief from the automatic stay is a final order over which we have jurisdiction.[1]

For the reasons stated below, we affirm the bankruptcy court's order.[2]

## I. STANDARD OF REVIEW

A decision to grant or deny a motion for relief from the automatic stay is within the discretion of the bankruptcy court and is reviewed for an abuse of discretion.[3] An abuse of discretion will be found if the court's judgment was based on clearly erroneous factual findings or on erroneous legal conclusions.[4] In its application, the abuse of discretion standard is nearly indistinguishable from the clearly erroneous standard.[5]

## II. BACKGROUND

Creditor DCS provides computer hardware, software, training, maintenance and support to automobile dealers across the country. Debtor Crossroads Ford, Inc. is a Ford dealership. On March 8, 1994, Crossroads entered into a contract with DCS for the installation of a computer system to facilitate electronic communications between Crossroads and Ford Motor Company relating to orders of cars and parts, accounting,

---

[1] *See In re Tetherow*, 16 F.3d 1228 (table) (8th Cir. 1994); *In re Montgomery*, 262 B.R. 772, 773-74 (B.A.P. 8th Cir. 2001); 28 U.S.C. §§ 158(a)(1) and 158(b)(1).

[2] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

[3] *See In re Bowman*, 253 B.R. 233, 237 (B.A.P. 8th Cir. 2000).

[4] *Id*.

[5] *See Gourley v. Usery* (*In re Usery*), 242 B.R. 450, 457 (B.A.P. 8th Cir. 1999) (citing *Forbes v. Forbes* (*In re Forbes*), 215 B.R. 183, 187 n. 6 (B.A.P. 8th Cir. 1997)).

warranty claims, service guides, product recall information, etc. The system was installed on November 7, 1994. After using the computer system for more than a decade, Crossroads sent a letter to DCS on August 8, 2005 seeking to buy out its remaining contractual obligations. The parties could not agree on a buyout, and Crossroads stopped paying DCS.

The contract between Crossroads and DCS ("Contract") requires the arbitration of "all disputes, claims, controversies, and other matters in question between the parties to this Agreement, arising out of or relating to this Agreement, or to the breach thereof. . . ." The Contract further provides that the arbitration proceeding "shall be governed by the commercial arbitration rules of the American Arbitration Association." On July 11, 2007, DCS demanded an arbitration to determine Crossroads's liability for its alleged breach of the Contract.

As provided in the Contract, the parties selected a panel of three arbitrators. The arbitrators held scheduling conferences in January 2008 and October 2009. By agreement of the parties, the evidentiary hearing was scheduled to begin on June 21, 2010, at the offices of the American Arbitration Association in Southfield, Michigan.[6]

However, on Saturday, June 19, 2010, Crossroads filed its bankruptcy petition. Despite the imminence of the impending arbitration, the only notice that Crossroads gave to the arbitrators, DCS, and DCS's attorneys was a fax sent on the evening of Saturday, June 19, 2010. Crossroads made no other effort to give notice of the bankruptcy filing, and on Sunday, June 20, 2010, the arbitrators and DCS's lawyers and witnesses flew from Houston to Detroit for the arbitration. Crossroads's secretary and treasurer, David Lenz, admitted at the § 341 meeting of creditors that the bankruptcy was filed for the purpose of delaying the arbitration.

---

[6] Crossroads's active participation in the arbitration process prior to its filing for bankruptcy seriously undermines Crossroads's claim that the arbitration agreement was procured through fraud.

Days later, on July 2, 2010, DCS filed a motion in the bankruptcy court seeking relief from the automatic stay to proceed with the arbitration. Crossroads opposed DCS's motion on several grounds, arguing *inter alia*: 1) that the arbitration agreement shouldn't be enforced because DCS fraudulently induced Crossroads to enter into the Contract by misrepresenting that DCS was affiliated with Ford Motor Co., and 2) that if relief from the stay was warranted, then the proper forum for arbitration of the dispute was an (alleged) pending class action arbitration against DCS in Texas.

The bankruptcy court held a hearing on DCS's motion on July 28, 2010, and took the matter under advisement.

On September 1, 2010, the bankruptcy court entered an order granting DCS's motion. It found that the arbitration of DCS's claim against the estate could go forward because the arbitration of DCS's claim does not irreconcilably conflict with the bankruptcy code; that the arbitrator could decide whether DCS fraudulently induced Crossroads to enter into the contract; and that Crossroads could intervene in the Texas arbitration as a member of the class if it was certified and resolve its dispute with DCS there.[7] Crossroads timely appealed.

---

[7] The bankruptcy court's order referred to a "federal court lawsuit in Texas." We presume the court intended to refer to the Texas arbitration involving DCS and a different Ford dealership, Randall Ford, Inc., styled *Dealer Computer Services, Inc., fka Ford Dealer Computer Services, et al v Randall Ford, Inc.*, American Arbitration Association Case No. 11 117 Y 002788 06.

## III.  DISCUSSION

Crossroads advances two arguments on appeal: 1) that the bankruptcy court erred by not ruling on the issue of whether the agreement to arbitrate was obtained by fraud, and 2) that the bankruptcy court should have tailored its order to require DCS's claim to be arbitrated by the allegedly, then-pending class action arbitration.[8] Neither argument has merit.

**A.  The bankruptcy court correctly determined that Crossroads's challenge to the Contract was subject to arbitration.**

Crossroads's challenge to the enforceability of the arbitration agreement is governed by the Federal Arbitration Act ("FAA"), which Crossroads concedes applies to the Contract.  As interpreted by the Supreme Court, the FAA – § 2 specifically – contemplates two types of challenges to the validity of an agreement to arbitrate: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."[9]  A party is entitled to have the first type of challenge heard by a federal court before a matter is arbitrated.[10]  The second type of challenge, however, is subject to

---

[8] Crossroads has abandoned all of the other arguments it raised before the bankruptcy court.

[9] *Rent-A-Center, West, Inc. v. Jackson*, – U.S. –, 130 S.Ct. 2772, 2783-84, 177 L.Ed.2d 403 (2010) ("*Rent-A-Center*").  *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed. 2d 1270 (1967).

[10] *See Rent-A-Center*, 130 S.Ct. at 2783-84.

arbitration,[11] and under § 3 and § 4 of the FAA, courts are directed to stay proceedings to permit an arbitration to go forward or to order a recalcitrant party to proceed with the arbitration.[12] Thus, the propriety of the bankruptcy court's decision hinged on whether Crossroads's challenge to the arbitration agreement in the Contract was directed specifically at the arbitration provision or whether it was directed at the Contract as a whole.

Crossroads maintains that its challenge to the Contract is, and has always been, specifically directed at the arbitration provision. But this position is belied by its pleadings before the bankruptcy court, and more notably, by its statements at trial. Crossroads's pre-trial brief on DCS's motion in the bankruptcy court contained a section entitled, "The Agreement to Arbitrate Was Obtained By Fraud and is Inoperative," but the substance of the ensuing section argued that the entire agreement was fraudulently induced. Crossroads's arguments at the hearing on DCS's motion confirm that Crossroads did not consider its challenge to the validity of the arbitration provision in the Contract separate from its challenge to the entire Contract. Its counsel argued:

> If that is the case, and if, indeed, Crossroads was induced to sign this contract, then we enter into a realm of pure Nebraska law. *This is not an issue of arbitration anymore, because it's a fraud in the inducement.* And as has been clearly stated in numerous Nebraska cases where there is a fraud in the inducement, there is a right to rescind *the contract.* There may well be also fraud in de factum (sic) here because of the importance of the person with whom Crossroads has contracted.

---

[11] *See id.; Rothman Furniture Stores, Inc. v. Everest Software, Inc.,* 2010 WL 4319707, *2 (E.D. Mo. October 10, 2010) ("[A] district court may 'consider a claim that a party was fraudulently induced to include an arbitration clause in a contract, but not a claim that an entire contract was the product of fraud.' ") (quoting *Houlihan v. Offerman & Co.*, 31 F.3d 692, 695 (8th Cir. 1994)).

[12] *See* 9 U.S.C. §§ 3 and 4.

If that is the case, then what we're looking at is an application of Nebraska law to determine *whether or not we ever get to the provision relating to arbitration.*

In the event that the Court finds that Nebraska law does not provide to the debtor the right to rescind this contract, and in the event that the Court finds, *then, that the contract is a valid and enforceable contract, the next question is not going to be the arbitration clause,* but the next question would be, which arbitration, because there's two arbitrations pending.

$* * *$

So, if we look at the overall picture of what we see, we find, I think, a different picture here. We find *a contract* that on its face is deceptive. They even changed the name. It was Universal Computers, or something of that nature, and then they changed it to Ford Dealers Computers. *Given that, then the big issue here is going to be Nebraska law, whether or not this debtor is required to -- is locked into a contract that was obtained by deception.*[13]

Crossroads's failure to raise an independent challenge before the bankruptcy court to the agreement to arbitrate is basis alone to affirm the bankruptcy court's order.[14] However, Crossroads's appeal fails even if the issue has been preserved.

Quite simply, Crossroads fails to appreciate that separately *alleging* that an agreement to arbitrate was obtained through fraud is different from offering a separate *basis* for the fraud. As the Supreme Court stated in *Rent-A-Center*, "[W]here the alleged fraud that induced the whole contract equally induced the agreement to

---

[13] Trial Tr. 10-12, July 28, 2010. (emphasis added).

[14] *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997) (arguments first raised on appeal will not be considered except to prevent manifest injustice).

arbitrate which was part of that contract . . . we nonetheless require the *basis* of challenge to be directed specifically to the agreement to arbitrate before the court will intervene."[15]

Here, the only fraud Crossroads has alleged is that DCS misrepresented that it was affiliated with Ford Motor Co.  It alleges that this fraud induced the arbitration and that this fraud induced the Contract as a whole.  Consequently, there was no need for the bankruptcy court to "intervene," or, in this case, to deny DCS's motion for relief from the stay.

Therefore, we find that the bankruptcy court did not abuse its discretion in ruling that the arbitration panel had jurisdiction to hear Crossroads's challenge to the Contract.

**B.     The bankruptcy court was not required to tailor its order granting DCS relief from the stay to require arbitration in the "class action arbitration" in Texas.**

At the time the bankruptcy court entered its order there was no pending class action arbitration pending in Texas.  Crossroads and many other dealerships were seeking to have a class certified in an arbitration brought by DCS in Texas against another Ford Dealership.  But the class wasn't certified as of the date of the hearing, so Crossroads wasn't actually a party to the arbitration.  And as it turns out, the arbitration panel in Texas declined to certify the class, so the issue is now moot (to the extent it ever had any validity).[16]  Therefore, the Court concludes that the bankruptcy

---

[15] *Rent-A-Center*, 130 S.Ct. at 2778.   *See also Everest*, 2010 WL 4319707, at *2.

[16] Randall Ford and the other putative class members are seeking to have the arbitration panel's denial of class certification vacated in the District Court for the Northern District of Texas.  *See* Case No. 3:11-cv 00825-P.  Whether the class is

court did not abuse its discretion in not tailoring its order to require DCS to arbitrate its claim in an arbitration to which Crossroads was not a party.

## IV. CONCLUSION

For the reasons stated above, the Court hereby affirms the bankruptcy court's September 1, 2010 order granting Creditor Dealer Computer Services relief from the automatic stay to proceed with the arbitration of its claim against the Debtor's bankruptcy estate.

---

ultimately certified, however, is irrelevant to our analysis here since we are reviewing the bankruptcy court's decision to grant DCS relief from stay at a time when no class had been certified.

9